UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK TIMES COMPANY

Plaintiff,

v.

CENTRAL INTELLIGENCE AGENCY,

Defendant.

16 Civ. 3098 (JSR)

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for Defendant
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone:  (212) 637-3274
Facsimile:  (212) 637-2786

LEIGH WASSERSTROM
Assistant United States Attorney
- Of Counsel -

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND ...................................................................................................1

LEGAL STANDARD................................................................................................................2

ANALYSIS.................................................................................................................................4

I.     The CIA's *Glomar* Response Is Proper .........................................................................4

        A.     The CIA Properly Provided a *Glomar* Response Pursuant to Exemption 1 ............6

        B.     The CIA Properly Provided a *Glomar* Response Pursuant to Exemption 3 ...........8

II.    The CIA Has Not Officially Acknowledged the Existence or Nonexistence of the
Purported Documents .....................................................................................................10

CONCLUSION.........................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**                                                      **PAGE**

*ACLU v. U.S. Department of Defense,*
    628 F.3d 612 (D.C. Cir. 2011) ....................................................................7

*ACLU v. Department of Defense,*
    752 F. Supp. 2d 361 (S.D.N.Y. 2010) .........................................................5

*ACLU v. FBI,*
    59 F. Supp. 3d 584, 588 (S.D.N.Y. 2014) ..................................................2

*A. Michael's Piano, Inc. v. FTC,*
    18 F.3d 138 (2d Cir. 1994) .........................................................................2

*Amnesty International USA v. CIA,*
    728 F. Supp. 2d 479 (S.D.N.Y. 2010) ..............................................5, 7, 9, 11

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ...................................................................................3

*CIA v. Sims,*
    471 U.S. 159 (1985) ..............................................................................9, 10

*Carney v. U.S. Department of Justice,*
    19 F.3d 807 (2d Cir. 1994) .........................................................................4

*Ctr. for Constitutional Rights v. Department of Defense,*
    968 F. Supp. 2d 623 (S.D.N.Y. 2013), *aff'd sub nom. Ctr. for Constitutional*
    *Rights v. CIA*, 765 F.3d 161 (2d Cir. 2014) ............................................11, 12

*Earth Pledge Foundation v. CIA,*
    988 F. Supp. 623 (S.D.N.Y. 1996),
    *aff'd*, 128 F.3d 788 (2d Cir. 1997) .........................................................5, 9

*FBI v. Abramson,*
    456 U.S. 615 (1982) ...................................................................................3

*Ferguson v. FBI,*
    No. 89 Civ. 5071 (RPP), 1995 WL 329307 (S.D.N.Y. June 1, 1995),
    *aff'd*, 83 F.3d 41 (2d Cir. 1996) ................................................................4

*Fox News Network, LLC v. U.S. Department of the Treasury,*
    739 F. Supp. 2d 515 (S.D.N.Y. 2010) .........................................................3

*Frugone v. CIA*,
  169 F.3d 772 (D.C. Cir. 1999) ..................................................................................11

*Gardels v. CIA*,
  689 F.2d 1100 (D.C. Cir. 1982) ..................................................................................5

*Grand Central Partnership, Inc. v. Cuomo*,
  166 F.3d 473 (2d Cir. 1999) ...................................................................................2, 4

*Halperin v. CIA*,
  629 F.2d 144 (D.C. Cir. 1980) ..................................................................................4

*Hunt v. CIA*,
  981 F.2d 1116 (9th Cir. 1992) .................................................................................4, 9

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989) ..................................................................................................2

*Larson v. Department of State*,
  565 F.3d 857 (D.C. Cir. 2009), *cert. denied*, 562 U.S. 828 (2010) ...............................4, 9

*Long v. Office of Person Management*,
  692 F.3d 185 (2d Cir. 2012) ......................................................................................3

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ..................................................................................................3

*Minier v. CIA*,
  88 F.3d 796 (9th Cir. 1996) .......................................................................................4

*Morley v. CIA*,
  508 F.3d 1108 (D.C. Cir. 2007) ..................................................................................7

*N.Y. Times v. U.S. Department of Defense*,
  499 F. Supp. 2d 501 (S.D.N.Y. 2007) .........................................................................9

*N.Y. Times v. U.S. Department of Justice*,
  756 F.3d 100 (2d Cir. 2014) .......................................................................................6

*N.Y. Times v. U.S. Department of Justice*,
  101 F. Supp. 3d 310, 317 (S.D.N.Y. 2015) ...................................................................3

*Phillippi v. CIA*,
  546 F.2d 1009 (D.C. Cir. 1976) ..................................................................................1

*Scotto v. Almenas,*
    143 F.3d 105 (2d Cir. 1998)..................................................................................3

*Weberman v. NSA,*
    668 F.2d 676 (2d Cir. 1982)..................................................................................5

*Wilner v. NSA,*
    592 F.3d 60 (2d Cir. 2009)..........................................................................4, 5, 11

*Wilson v. CIA,*
    586 F.3d 171 (2d Cir. 2009)................................................................................11

*Wolf v. CIA,*
    473 F.3d 370 (D.C. Cir. 2007) .......................................................................5, 11

**STATUTES AND REGULATIONS**

5 U.S.C. § 552...........................................................................................................6, 8

50 U.S.C. § 3024..........................................................................................................9

75 Fed. Reg. 707...........................................................................................................6

**RULES**

Fed. R. Civ. P. 56..........................................................................................................3

Defendant the Central Intelligence Agency ("CIA"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, as against the claims filed by Plaintiff The New York Times Company (the "Times") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").

## PRELIMINARY STATEMENT

In this action, the Times requested three purported records from the CIA under FOIA. The CIA has neither confirmed nor denied the existence or nonexistence of the purported records sought by the Times' FOIA request; this is known as a *Glomar* response.[1]  The fact of the existence or nonexistence of such records would reveal CIA intelligence activities, sources, and methods and is currently and properly classified and exempt from disclosure by statute.  Whether or not the CIA in fact has any responsive records is therefore exempt from disclosure under FOIA Exemptions 1 and 3, and the CIA's *Glomar* response is proper.  For the reasons set forth below, the CIA is entitled to summary judgment upholding its *Glomar* response to the Times' FOIA request.

## FACTUAL BACKGROUND

On October 22, 2013, the Times submitted a FOIA request to the CIA (the "FOIA Request" or "Request").  *See* Declaration of Antoinette B. Shiner ("Shiner Decl.") ¶ 5 & Ex. A; *accord* Compl. ¶ 8.  Plaintiff's Request sought three purported reports relating to chemical weapons in Iraq.  *See* Shiner Decl. ¶ 5.  By letter dated December 30, 2013, the CIA acknowledged receipt of the Times' FOIA Request, and further informed the Times that, "[i]n accordance with section 3.6(a) of Executive Order 13526, the CIA can neither confirm nor deny

---

[1] The term "*Glomar* response" arises from the CIA's successful defense of its refusal to confirm or deny the existence of records regarding a ship named the *Hughes Glomar Explorer* in *Phillippi v. CIA*, 546 F.2d 1009, 1011 (D.C. Cir. 1976).

the existence or nonexistence of records responsive" to the Request both because the existence or

nonexistence of such records was a properly classified fact and because it was information

relating to intelligence sources and methods and therefore exempt from disclosure by statute.

*See* Shiner Decl. ¶ 6 & Ex. B.

By letter dated January 9, 2014, the Times appealed the CIA's so-called *Glomar* response

to the Agency Release Panel ("ARP"), arguing that the "CIA failed to assert any plausible harm

to occur by disclosing the existence of these files." *See* Shiner Decl.¶ 7 & Ex. C.  The CIA

acknowledged its receipt of the Times' appeal by letter dated March 5, 2014.  *See* Shiner Decl.

Ex. D.  By letter dated June 3, 2014, the ARP informed the Times that it had denied his appeal

"on the basis of FOIA exemptions (b)(1) and (b)(3)."  *See* Shiner Decl. Ex. E.  The denial letter

explained that it could neither confirm nor deny the existence or nonexistence of records

responsive to the Request because the "fact of" whether such records exist is a properly

classified fact and exempt from disclosure by statute.  *See id.*

On April 26, 2016, the Times filed the instant civil action, *see* Dkt. No. 1, and the CIA

answered on May 27, 2016, *see* Dkt. No. 10.  The CIA now moves for summary judgment.

## LEGAL STANDARD

"FOIA was enacted to promote honest and open government and to . . . advance a general

philosophy of full agency disclosure." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d

Cir. 1999) (internal quotation marks omitted).  At the same time, FOIA is intended to "strike[] 'a

workable balance between the right of the public to know and the need of the Government to

keep information in confidence.'" *ACLU v. F.B.I.*, 59 F. Supp. 3d 584, 588 (S.D.N.Y. 2014)

(quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)); *see also A. Michael's

Piano, Inc. v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994) (FOIA exemptions "reflect Congress'

recognition that releasing certain records might prejudice legitimate private or governmental interests" (citing *FBI v. Abramson*, 456 U.S. 615, 621 (1982))).  "FOIA requires a federal agency to disclose records in its possession unless they fall under one of nine enumerated and exclusive exemptions."  *N.Y. Times v. U.S. Dep't of Justice*, 101 F. Supp. 3d 310, 317 (S.D.N.Y. 2015); *see also* 5 U.S.C. § 552(a)-(b).

Summary judgment is the "preferred" procedural vehicle by which most FOIA claims are resolved.  *Fox News Network, LLC v. U.S. Dep't of the Treasury*, 739 F. Supp. 2d 515, 532 (S.D.N.Y. 2010); *see N.Y. Times*, 101 F. Supp. 3d at 317; *see also Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) ("In resolving summary judgment motions in a FOIA case, a district court proceeds primarily by affidavits in lieu of other documentary or testimonial evidence . . . .").  Under Rule 56(c), summary judgment is warranted when, viewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The moving party bears the burden of showing that it is entitled to summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The nonmoving party, however, may not rely solely on "conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

Summary judgment as to the applicability of a FOIA exemption is "warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Wilner v. NSA*, 592 F.3d 60, 73 (2d Cir. 2009) (quoting *Larson v.*

3

*Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009), *cert. denied*, 562 U.S. 828 (2010)); *see Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980). The presumption of good faith accorded to affidavits submitted by an agency "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Grand Cent. P'ship*, 166 F.3d at 489 (internal quotation marks and citations omitted). Thus, a court may award summary judgment if the affidavits provided by the agency are "adequate on their face." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wilner*, 592 F.3d at 73 (quoting *Larson*, 565 F.3d at 862). Moreover, "[i]n evaluating an agency's *Glomar* response, a court must accord 'substantial weight' to the agency's affidavits." *Id.* at 68 (quoting *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996)).[2]

## ANALYSIS

### I.   The CIA's *Glomar* Response Is Proper

The CIA is entitled to summary judgment upholding its *Glomar* response. Government agencies "may issue a 'Glomar Response,' that is, refuse to confirm or deny the existence of certain records, if the FOIA exemption would itself preclude the acknowledgment of such documents." *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996) (citing *Hunt v. CIA*, 981 F.2d 1116, 118 (9th Cir. 1992)). In cases in which an agency's acknowledgment of whether records do or do not exist "would cause harm cognizable under a FOIA exception" the agency may

---

[2]   Because agency affidavits alone will support a grant of summary judgment in a FOIA case, Local Rule 56.1 statements are unnecessary, *see Ferguson v. FBI*, No. 89 Civ. 5071 (RPP), 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995) (noting "the general rule in this Circuit"), *aff'd*, 83 F.3d 41 (2d Cir. 1996), and discovery is generally inappropriate, *see Carney*, 19 F.3d at 812 ("In order to justify discovery once the agency has satisfied its burden, the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate.") (citation omitted).

respond to a FOIA request with a *Glomar* response, whereby the agency "may refuse to confirm or deny the existence of records." *Wilner*, 592 F.3d at 68 (quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)) (brackets omitted).

When employing a *Glomar* response, the "agency must 'tether' its refusal to respond to one of the nine FOIA exemptions." *Id.* (citation omitted).  Although "the agency 'resisting disclosure' of the requested records 'has the burden of proving the applicability of an exemption,'" "the agency may meet its burden by submitting a detailed affidavit showing that the information logically falls within the claimed exemptions." *Id.*  Thus, "when the Agency's position is that it can neither confirm nor deny the existence of the requested records, there are no relevant documents for the court to examine other than the affidavits which explain the Agency's refusal." *Wolf v. CIA*, 473 F.3d 370, 374 n.4 (D.C. Cir. 2007) (internal quotation marks omitted).  "In evaluating an agency's *Glomar* response, a court must accord substantial weight to the agency's affidavits, provided that the justifications for nondisclosure are not controverted by contrary evidence in the record or by evidence of bad faith." *Wilner*, 592 F.3d at 68 (internal quotation marks and ellipsis omitted).

Courts in this Circuit have repeatedly upheld *Glomar* responses where, as here, confirming or denying the existence or nonexistence of a record would either reveal classified information that is protected by FOIA Exemption 1 or disclose information prohibited by statute that is protected by FOIA Exemption 3.  *See, e.g.*, *Wilner*, 592 F.3d at 68 (Exemption 3); *Weberman v. NSA*, 668 F.2d 676, 676-78 (2d Cir. 1982) (Exemptions 1 and 3); *ACLU v. Dep't of Def.*, 752 F. Supp. 2d 361, 364-65 (S.D.N.Y. 2010) (Exemption 1); *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 514 (S.D.N.Y. 2010) (Exemptions 1 and 3); *Earth Pledge Found. v. CIA*, 988 F. Supp. 623, 627-28 (S.D.N.Y. 1996) (Exemptions 1 and 3), *aff'd*, 128 F.3d 788 (2d Cir.

1997).  Here, the CIA has submitted a detailed declaration that explains why the fact of the

existence or nonexistence of the purported records is exempt from disclosure pursuant to FOIA

Exemptions 1 and 3, each of which independently justifies the CIA's *Glomar* response.  *See*

*generally* Shiner Decl.

**A.   The CIA Properly Provided a *Glomar* Response Pursuant to Exemption 1**

The CIA's *Glomar* response is justified by Exemption 1.  FOIA Exemption 1 protects

from disclosure records and information that are properly classified pursuant to an Executive

Order.  5 U.S.C. § 552(b)(1).  Specifically, FOIA exemption 1 applies to matters that are "(A)

specifically authorized under criteria established by an Executive order to be kept secret in the

interest of national defense or foreign policy and (B) are in fact properly classified pursuant to

such Executive order."  *Id.* § 552(b)(1)(A)-(B).  The relevant Executive Order in this case is

Executive Order ("EO") 13526, 75 Fed. Reg. 707 (Dec. 29, 2009), which "allows an agency to

withhold information that (1) 'pertains to' one of the categories of information specified in the

Executive order, . . . and (2) if 'unauthorized disclosure of the information could reasonably be

expected to cause identifiable and describable damage to the national security.'"  *N.Y. Times v.*

*U.S. Dep't of Justice*, 756 F.3d 100, 104 (2d Cir. 2014) (quoting EO 13526 §§ 1.1, 1.4).

Section 1.4(c) of the EO, in turn, specifies that information pertaining to "intelligence activities"

and "intelligence sources or methods" may be properly classified.  EO 13526 § 1.4(c).  A

*Glomar* response is expressly countenanced by EO 13526 "whenever the fact of [the] existence

or nonexistence [of requested records] is itself classified under this order or its predecessors."

EO 13526 § 3.6(a).

In considering whether Exemption 1 applies, "[l]ittle proof or explanation is required

beyond a plausible assertion that information is properly classified."  *Morley v. CIA*, 508 F.3d

1108, 1124 (D.C. Cir. 2007).  Indeed, because assessment of harm to national security is

entrusted to the Executive Branch rather than courts, "the government's burden is a light one," "searching judicial review" is inappropriate, and "plausible" and "logical" government arguments for nondisclosure will be sustained.  *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011) (internal citations omitted); *see also Amnesty Int'l*, 728 F. Supp. 2d at 508 (deferring to executive declarations predicting harm to national security).

Here, the CIA's *Glomar* response is proper under Exemption 1 because the existence or nonexistence of any records requested by Plaintiff is a currently and properly classified fact under Section 1.4(c) of EO 13526.  Shiner Decl. ¶ 20; *see* 5 U.S.C. § 552(b)(1).  As described in the Shiner Declaration, the fact of the existence or nonexistence of records responsive to the FOIA Request is "a currently and properly classified fact that concerns Section 1.4(c) of the Executive Order, 'intelligence activities' and 'intelligence sources and methods,'" and the "unauthorized disclosure of information confirming or denying the existence or nonexistence of the requested records reasonably could be expected to result in damage to the national security."[3] Shiner Decl. ¶ 20; *see also id.* ¶¶ 25-35.

With respect to intelligence activities, the declaration explains that "acknowledging the existence or nonexistence" of the purported records "reasonably could be expected to cause damage to the national security by  disclosing whether or not the CIA has or had intelligence interest in the subjects implicated by the request, disclosing whether or not the CIA engaged in intelligence operations involving related to the subjects of the request, and indicating to the CIA's adversaries how the CIA would or would not choose to focus its intelligence activities on other subjects of interest."  *Id.* ¶ 27.   Second, with respect to intelligence sources, the declaration

---

[3] In addition, the declaration affirms that the procedural requirements of EO 13526 have been satisfied and that the information has not been classified in order to conceal violations of law, or inefficiency, administrative error; to prevent embarrassment to a person, organization or agency; to restrain competition; or prevent or delay the release of information that does not require protection in the interest of national security.  *Id.* ¶¶ 3, 20, 21.

affirms that "[i]f the CIA were to provide responses either confirming or denying that it possesses records concerning any particular topic or subject at a specific point in time, this admission could identify human intelligence sources, as well as reveal information about the CIA's specific intelligence interests or activities, in the absence of an acknowledged overt connection to this topic or subject." *Id.* ¶ 30.  Furthermore, "acknowledging the existence or nonexistence of records reasonably could be expected to cause damage to the national security by indicating whether or not the CIA maintained any human intelligence sources related to the subjects implicated by the request, and identifying the access or lack of access any such sources had to intelligence concerning the subjects implicated by the request." *Id.*  Finally, with respect to intelligence methods, the declaration states that "acknowledging that the CIA possesses the requested records would reveal that the subject was a target of intelligence collection" and "[a]cknowledging the absence of such records would reveal that the subject was not a target of collection." *Id.* ¶ 35.  "In either case, such an admission would implicate intelligence sources and methods in a manner harmful to U.S. national security because it would reveal to the plaintiff and the public, including foreign intelligence services and targets, facts about the CIA's clandestine intelligence activities."  *Id.*[4]

**B.  The CIA Properly Provided a *Glomar* Response Pursuant to Exemption 3**

The CIA's *Glomar* response is also justified by Exemption 3.  Under Exemption 3, matters "specifically exempted from disclosure" by certain statutes need not be disclosed.  5 U.S.C. § 552(b)(3).  Here, the relevant statute is Section 102A(i)(1) of the National Security Act

---

[4] Finally, the declaration explains that confirming the existence or nonexistence of purported records could harm the national security where, as here, the Times has requested specific purported records that have not been officially acknowledged.  Shiner Decl. ¶ 17.  To the extent that the Request is based on information obtained through an unauthorized disclosure, any response by the CIA confirming or denying the existence of the purported records would tend to confirm whether information obtained through such unauthorized disclosure is accurate.  *Id.*

("NSA"), as amended, which provides that the "Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1); *see also* Shiner Decl. ¶ 23.  It is well established that the NSA is an exempt statute within the meaning of Exemption 3.  *See, e.g.*, *CIA v. Sims*, 471 U.S. 159, 167-68 (1985); *Amnesty Int'l USA*, 728 F. Supp. 2d at 501; *N.Y. Times v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 512 (S.D.N.Y. 2007); *Earth Pledge Found.*, 988 F. Supp. at 627.

Moreover, to support a claim that information may be withheld pursuant to Exemption 3, an agency need not show that there would be any harm to national security from disclosure, only that the withheld information falls within the purview of the exemption statute.  *See Larson*, 565 F.3d at 868.  As the Supreme Court held in *Sims*, the CIA's discretion in determining what would constitute an unauthorized disclosure of intelligence sources and methods is very broad.  *See Sims*, 471 U.S. at 168-70; *see also Hunt*, 981 F.2d at 1120 (describing CIA's discretion to withhold information under Exemption 3 as "a near-blanket FOIA exemption").

In *Sims*, the Supreme Court gave a broad reading to "intelligence sources and methods" under the NSA.  471 U.S. at 169-74.  The Supreme Court held that "[t]he plain meaning of the statutory language, as well as the legislative history of the National Security Act, . . . indicates that Congress vested in the Director of Central Intelligence very broad authority to protect all sources of intelligence information from disclosure," *id.* at 168-69, and the Court rejected "any limiting definition that goes beyond the requirement that the information fall within the Agency's mandate to conduct foreign intelligence."  *Id.* at 169.   Further, the Court observed, Congress "simply and pointedly protected all sources of intelligence that provide, or are engaged to provide, information the Agency needs to perform its statutory duties with respect to foreign intelligence."  *Id.* at 169-70.

Here, the CIA has amply met its burden of demonstrating that the confirmation or denial of the existence of responsive records could reasonably be expected to result in the unauthorized disclosure of intelligence sources and methods.  *See* Shiner Decl. ¶¶ 22-24, 28-35.  As discussed *supra*, Ms. Shiner's declaration affirms that "confirming or denying the existence or nonexistence of the requested records would tend to reveal intelligence sources and methods." *Id.* ¶ 23.  Specifically, the declaration states that "[i]f the CIA were to provide responses either confirming or denying that it possesses records concerning any particular topic or subject at a specific point in time, this admission could identify human intelligence sources, as well as reveal information about the CIA's specific intelligence interests or activities." *Id.* ¶ 30.  Likewise, "acknowledging that the CIA possesses the requested records would reveal that the subject was a target of intelligence collection," and "[a]cknowledging the absence of such records would reveal that the subject was not a target of collection," either of which response would implicate intelligence sources and methods.  *Id.* ¶ 35.  Thus, the CIA properly provided a *Glomar* response to protect from disclosure information relating to intelligence sources and methods that is both properly classified and exempted from disclosure by statute.

## II.    The CIA Has Not Officially Acknowledged the Existence or Nonexistence of the Purported Documents

The CIA has neither officially nor publicly acknowledged the existence or nonexistence of the purported documents requested by the Times, and therefore the Government may properly provide a *Glomar* response.  The Complaint alleges that following the publication of articles by the Times, "the Government officially acknowledged many of the details of the chemical weapons program and the injuries sustained by military personnel," and has therefore waived its right to provide a *Glomar* response.  Compl. ¶ 13.  The Second Circuit has made clear, however, that an agency "loses its ability to provide a *Glomar* response" only "when the existence or

nonexistence of the particular records covered by the *Glomar* response has been officially and publicly disclosed." *Wilner*, 592 F.3d at 70.  In order to prevail on such an argument, "[a] strict test applies," and information "is deemed to have been officially disclosed only if it (1) is as specific as the information previously released, (2) matches the information previously disclosed, and (3) was made public through an official and documented disclosure." *Wilson v.CIA*, 586 F.3d 171, 186 (2d Cir. 2009) (quotation marks and brackets omitted).  Under this strict test, "[p]rior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure." *Wolf*, 473 F.3d at 378 (emphasis in original). "A general acknowledgment . . . is not equivalent to "'*specific* information sought.'" *Amnesty Int'l USA*, 728 F. Supp. 2d at 512 (quoting *Wolf*, 473 F.3d at 378) (emphasis in original).  Moreover, it is well settled that a disclosure is not "official" unless it is made by the agency from which the information is sought. *Frugone v. CIA*, 169 F.3d 772, 774 (D.C. Cir. 1999); *Ctr. for Constitutional Rights v. Dep't of Def.*, 968 F. Supp. 2d 623, 638-39 (S.D.N.Y. 2013), *aff'd sub nom. Ctr. for Constitutional Rights v. CIA*, 765 F.3d 161 (2d Cir. 2014).

The Times does not allege—nor could it—that the existence or nonexistence of the purported documents in the Request have been acknowledged through an official and documented disclosure by the CIA.  The Complaint conclusorily alleges that there has been official acknowledgment of unspecified "details of the chemical weapons program" by an unspecified branch of "the Government."  Compl. ¶ 13.  As set forth in the Shiner declaration, however, "the existence or nonexistence of the specific requested records has not been officially acknowledged, nor, more generally, has the CIA's role, if any, in the collection and analysis of foreign intelligence information related to Iraq's chemical weapons program in December 2006,

March 2007, and August 2007."  Shiner Decl. ¶ 17.  Accordingly, absent any official acknowledgment by the CIA of the existence or nonexistence of the specific information requested, the CIA has not waived its right to invoke a *Glomar* response.  *See Ctr. for Constitutional Rights*, 968 F. Supp. 2d at 638-39; *Amnesty Int'l USA*, 728 F. Supp. 2d at 512.

## CONCLUSION

For the reasons stated herein, the CIA's motion for summary judgment should be granted.


Dated:  New York, New York
         June 13, 2016

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for Defendant

                               By:     /s/ *Leigh Wasserstrom*
                                        LEIGH WASSERSTROM
                                        Assistant United States Attorney
                                        86 Chambers Street, 3rd Floor
                                        New York, New York 10007
                                        Telephone:  (212) 637-3274
                                        Facsimile:  (212) 637-2786
                                        E-mail:  leigh.wasserstrom@usdoj.gov