UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NEW YORK TIMES COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CENTRAL INTELLIGENCE AGENCY,<br><br>Defendant. | 16 Civ. 3098 (JSR) |

**AMENDED MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for Defendant
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-3274
Facsimile: (212) 637-2786

LEIGH WASSERSTROM
Assistant United States Attorney
  - Of Counsel -

## TABLE OF CONTENTS

PREMILINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

    A.    The CIA Has Not Officially Acknowledged the Existence or Nonexistence of the Purported Documents .....................................................................................2

        1.    Standard for Waiver of *Glomar* by Official Disclosure...............................2

        2.    The CIA Has Not Acknowledged the Existence of the Purported Records or Otherwise Waived Its Right to Provide a *Glomar* Response ....3

    B.    The CIA's *Glomar* Response Is Logically and Plausibly Supported by the Shiner Declaration ...............................................................................................................6

CONCLUSION ...............................................................................................................................11

## TABLE OF AUTHORITIES

**CASES**                                               **PAGE**

*ACLU v. Department of Defense*,
    752 F. Supp. 2d 361 (S.D.N.Y. 2010)..................................................................................3, 4, 5

*ACLU v. Department of Justice*,
    No. 12 Civ. 794 (CM), 2015 WL 4470192 (S.D.N.Y. July 16, 2015)......................*Passim*

*Amnesty International USA v. CIA*,
    728 F. Supp. 2d 479 (S.D.N.Y. 2010).....................................................................*Passim*

*Carney v. Department of Justice*, 19 F.3d 807, 812 (2d Cir. 1994)..................................................7

*Ctr. for Constitutional Rights v. Department of Defense*,
    968 F. Supp. 2d 623 (S.D.N.Y. 2013)......................................................................................3

*Florez v. CIA*,
    No. 14-cv-1002 (SHS), 2015 WL 728190 (S.D.N.Y. Feb. 19, 2015) .....................*Passim*

*Florez v. CIA*,
    No. 15-1055-CV, 2016 WL 3769948 (2d Cir. July 14, 2016)............................................6

*Larson v. Department of State*,
    565 F.3d 857 (D.C. Cir. 2009) ..............................................................................................10

*N.Y. Times Co. v. Department of Justice*,
    756 F.3d 100 (2d Cir. 2014)..........................................................................................3, 5, 7

*Wilner v. NSA*,
    592 F.3d 60 (2d Cir. 2009)..................................................................................*Passim*

*Wilson v. CIA*,
    586 F.3d 171 (2d Cir. 2009)..........................................................................................3, 4

Defendant the Central Intelligence Agency ("CIA"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in further support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, as against the claims filed by Plaintiff The New York Times Company (the "Times") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and in opposition to the Times' cross-motion for summary judgment (the "Times' Motion").

## PRELIMINARY STATEMENT

As set forth in the CIA's opening memorandum in support of its motion for summary judgment, this action arises from the CIA's *Glomar* response to the Times' FOIA request seeking three purported documents, which (based on their titles as described by the Times) allegedly relate to chemical weapons in Iraq and were allegedly published between December 2006 and August 2007. Dkt. No. 12 (the "CIA's Motion"). Because the existence or nonexistence of such records would reveal CIA intelligence activities, sources, and methods and is currently and properly classified fact, which is also exempt from disclosure by statute, the CIA properly provided a *Glomar* response to the Times.

The Times' Motion sets forth two arguments why the CIA's *Glomar* response is inappropriate, neither of which is availing. First, the Times' Motion incorrectly argues that the CIA has waived its right to provide a *Glomar* response on the basis of supposed "official disclosures." Dkt. No. 15 (the "Times' Motion.") at 24-26. The CIA has made no official disclosure, and the Times has not shown any official disclosure, of the existence or nonexistence of the requested records. Second, the Times' Motion incorrectly argues that the declaration the CIA provided in support of its motion is insufficiently detailed to justify the agency's *Glomar* response. *Id.* at 26-29. The Declaration of Antoinette B. Shiner (the "Shiner Decl.") amply justifies the CIA's *Glomar* response, as it logically and plausibly explains why the existence or

1

nonexistence of the requested records is properly classified and statutorily protected, and thus exempt from disclosure under FOIA Exemptions 1 and 3.

## ARGUMENT

### A. The CIA Has Not Officially Acknowledged the Existence or Nonexistence of the Purported Documents

#### 1. Standard for Waiver of *Glomar* by Official Disclosure

"An agency only loses its ability to provide a *Glomar* response when the existence or nonexistence of the *particular* records covered by the *Glomar* response has been officially and publicly disclosed." *Wilner v. NSA*, 592 F.3d 60, 70 (2d Cir. 2009) (emphasis added). "[W]hat waives *Glomar* is an acknowledgement that records do in fact exist . . . —not disclosure about the matters discussed in those records." *ACLU v. Dep't of Justice*, No. 12 CIV. 794 (CM), 2015 WL 4470192, at *49 (S.D.N.Y. July 16, 2015) (internal citation omitted). Accordingly, agencies may properly provide a *Glomar* response notwithstanding general acknowledgments related to the same subject matter. In *Wilner*, for example, the Second Circuit held that the CIA could provide a *Glomar* response as to the "details of the [Terrorist Surveillance Program's] operations and scope" even though the President and the CIA Director had officially acknowledged the existence of the program. 592 F.3d at 69-70; *see also Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 512 (S.D.N.Y. 2010) (CIA did not waive its right to invoke a *Glomar* response to request for specific records regarding details of use of enhanced interrogation techniques with respect to specific detainees notwithstanding acknowledgment that CIA used enhanced interrogations techniques for such detainees); *Florez v. CIA*, No. 14-CV-1002 SHS, 2015 WL 728190, at *9 (S.D.N.Y. Feb. 19, 2015) (holding that CIA had not waived its right to assert a *Glomar* response where documents in the public domain did not reveal the existence of any intelligence source, method, or activity). Moreover, disclosure by a source other than the CIA, including another

federal agency, cannot constitute an official disclosure for the purpose of waiving the agency's ability to invoke a *Glomar* response because "the law will not infer official disclosure of information classified by the CIA from," among other things, "release of information by another agency, or even Congress."  *Wilson v. CIA*, 586 F.3d 171, 186-87 (2d Cir. 2009); *see also ACLU v. Dep't of Justice*, No. 12 CIV. 794 (CM), 2015 WL 4470192, at *3 (S.D.N.Y. July 16, 2015); *Ctr. for Constitutional Rights v. Dep't of Def.*, 968 F. Supp. 2d 623, 638-39 (S.D.N.Y. 2013), *aff'd sub nom. Ctr. for Constitutional Rights v. CIA*, 765 F.3d 161 (2d Cir. 2014); *ACLU v. Dep't of Defense*, 752 F. Supp. 2d 361, 367 (S.D.N.Y. 2010).

The Times' suggestion that the "doctrine of official acknowledgment as it applies to documents is in flux," Times' Motion at 25, is simply inaccurate.  In the very case cited by the Times, the Second Circuit unambiguously stated that the *Wilson* test "remains the law of this Circuit."  *N.Y. Times Co. v. Dep't of Justice*, 756 F.3d 100, 120 n.19 (2d Cir. 2014).  Furthermore, the Second Circuit did not question the applicability of the *Wilner* test for waiver in the *Glomar* context.  Rather, to the extent the case addressed *Glomar*, the Court held only that the CIA could not justify a *Glomar* response where the only basis for the *Glomar* was to protect information concerning whether or not the CIA had an undefined operational role in drone strikes, and the Court found that the head of the CIA had publicly disclosed that very information.  756 F.3d at 122.  Nothing remotely comparable occurred here.

### 2. The CIA Has Not Acknowledged the Existence or Nonexistence of the Purported Records or Otherwise Waived Its Right to Provide a *Glomar* Response

Here, the CIA has not waived its ability to provide a *Glomar* response on the basis of any official disclosure.  The Times argues that the CIA's general "interest" in "Iraqi chemical weapons" has been officially acknowledged based on certain documents included as exhibits B-L to the Declaration of David McCraw ("McCraw Decl.") (collectively, the "Public Documents").

On the basis of these documents and disclosures, the Times argues that the CIA's right to invoke a *Glomar* response has been vitiated. Times' Motion at 11-16, 25. This argument is unsupported by the case law and by the contents of the Public Documents.

As a threshold matter, many of the Public Document are not CIA documents, and therefore cannot waive the CIA's right to provide a *Glomar* response.[1] McCraw Decl. Exs. H, K, L. Likewise, without specifying any particular statements, the Times points to several news articles that it argues reflect "2014 Official Disclosures" by the Pentagon and the Army. Times' Motion at 14-15. These documents or statements do not acknowledge the existence of the requested records, but even if they did, none of these documents or unspecified statements constitutes an official disclosure *by the CIA*. Rather, the statements allegedly were made by other agencies or entities, such as DOD and the Army, and thus cannot effect an official disclosure by the CIA. *Wilson*, 586 F.3d at 186-87; *ACLU*, 2015 WL 4470192, at *3; *Ctr. for Constitutional Rights*, 968 F. Supp. 2d at 638-39; *ACLU*, 752 F. Supp. 2d at 367.

In any event, none of the Public Documents waives the CIA's right to provide a *Glomar* response to the FOIA request in this case. It is uncontroverted that the CIA has not acknowledged the existence or nonexistence of the three requested records. Shiner Decl. ¶ 17. None of the Public Documents acknowledges the existence of those records, or even the existence of *any* CIA records regarding chemical weapons in Iraq from the time period in which the purported documents were allegedly published.[2] These facts are fatal to any claim of waiver.

---

[1] The Times argues that other of the Public Documents are "CIA publications," Times' Motion at 11, that the CIA "participated" in their preparation, Times' Motion at 12, or that they were published "under the authority" of the Director of Central Intelligence, McCraw Ex. M at 3. *See, e.g.*, McCraw Decl. Exs. B, C, E, F, M. Even assuming that these documents constitute "official" statements by the CIA, which the CIA does not concede, for the reasons set forth below, none of these documents waives the CIA's ability to provide a *Glomar* response here.

[2] The purported documents requested by the Times were allegedly published between December 2006 and August 2007, whereas the Public Documents were published between 1988 and April

4

*Wilner*, 592 F.3d at 70; *ACLU*, 2015 WL 4470192, at *49; *Amnesty Int'l USA*, 728 F. Supp. 2d at 512. In *Amnesty International USA*, for example, the court held that the CIA had not waived its right to provide a *Glomar* response with respect to requests for operational cables "discussing and/or approving" the use of enhanced interrogation techniques as to certain detainees, notwithstanding the fact that the CIA had acknowledged the use of such interrogation techniques as to the same detainees, because the CIA's general acknowledgment did not disclose the existence or nonexistence of the specific operational cables requested. *Amnesty Int'l USA*, 728 F. Supp. 2d at 512. Similarly here, because there has been no "acknowledgement that [the requested] records do in fact exist," the CIA has not waived its right to provide a *Glomar* response. *ACLU*, 2015 WL 4470192, at *49; *see also ACLU*, 752 F. Supp. 2d at 367.

Even if the Public Documents acknowledged the CIA's general "interest" in Iraqi chemical weapons in an earlier time period than the purported documents, such acknowledgment would not vitiate the CIA's right to provide a *Glomar* response here. In *Florez v. CIA*, No. 14-cv-1002 (SHS), 2015 WL 728190, at *10 (S.D.N.Y. Feb. 19, 2015), for example, the plaintiff similarly argued that documents purportedly reflecting the CIA's "interest" in a particular individual waived its ability to assert a *Glomar* response with respect to the existence or nonexistence of documents that would reveal a CIA classified interest in that individual. The court held that the CIA's *Glomar* response was justified because the public disclosures did not identify any classified interest in the individual or intelligence source or activity. *Id.* The same is true here. The Public Documents do not acknowledge the CIA's involvement in the collection and analysis of foreign intelligence information related to Iraq's chemical weapons program in

---

2006. McCraw Decl. Ex. B (September 2004); McCraw Decl. Ex. C (March 2005); McCraw Decl. Ex. E (January 2003); McCraw Decl. Ex. F (May 2002); McCraw Decl. Ex. G (April 1988); McCraw Decl. Ex. H (September 2002); McCraw Decl. Ex. I (January 2006); McCraw Decl. Ex. J (January 2005); McCraw Decl. Ex. K (April 2006); McCraw Decl. Ex. L (discussing events in 2004 and 2005); McCraw Decl. Ex. M (October 2002).

the time period from December 2006 to August 2007, much less any intelligence source, method, or activity.³

The Times is also incorrect that the Public Documents undermine the CIA's justification for its *Glomar* response. Times' Motion at 24-26. Unlike the agency's *Glomar* response in *N.Y. Times Co.*, the CIA's *Glomar* in this action is not premised on the need to protect a fact that has been officially acknowledged. 756 F.3d at 122. Broadly, the basis for the agency's *Glomar* response here is that the existence or nonexistence of the requested records is a properly classified fact, and acknowledging the existence or nonexistence of those records could reasonably be expected to cause damage to the national security insofar as it "would tend to reveal the scope of the CIA's intelligence activities, and potentially the CIA's sources and methods of collection." Shiner Decl. ¶¶ 20, 25. Further, "the CIA's role, if any, in the collection and analysis of foreign intelligence information related to Iraq's chemical weapons program in December 2006, March 2007, and August 2007" has not been officially acknowledged. Shiner Decl. ¶ 17. The Public Documents contain no such acknowledgment. Although certain of the

---

³ The plaintiff in *Florez* appealed the district court's decision, and on July 14, 2016, the Second Circuit remanded the case to the district court for consideration of several documents that were declassified by the FBI while the appeal was pending. *Florez v. CIA*, No. 15-1055-CV, 2016 WL 3769948 (2d Cir. July 14, 2016). Although the Second Circuit remanded the case to the district court "to pass on the import of those documents in the first instance," it did not reach the merits of the appeal or vacate or reverse the district court's decision. *Id.* at *2. Affirming the continued applicability of *Wilner* and *Wilson*, the Second Circuit noted that documents released by the FBI could not "waive the [CIA's] right to a *Glomar* response." *Id.* at *6. The Second Circuit concluded, however, that the FBI documents "are relevant evidence—unavailable to the District Court at the time of its initial decision—bearing upon the sufficiency of the justifications set forth by the CIA in support of its *Glomar* response." *Id.* at *6. The Second Circuit noted that "the official acknowledgment doctrine has no impact on our opinion in this case," but declined to "place an arbitrary limitation on the range of evidence a district court may consider in assessing the sufficiency of an agency affidavit filed in support of a *Glomar* response." *Id.* Accordingly, the Second Circuit remanded the case to the district court "with instructions to enter an order stating whether its prior conclusion that the CIA adequately justified its *Glomar* response must be revised in light of the FBI Disclosures and any post-remand submissions." *Id.* at *8. For the reasons discussed below, the Times has not provided any evidence that controverts the justifications for the CIA's *Glomar* response here.

6

documents may reflect the CIA's awareness and discussion of the existence of chemical weapons in Iraq during the time periods they address, the Public Documents do not reflect the CIA's involvement in the collection or analysis of foreign intelligence information during the time period relevant to the Times' FOIA request.  *See supra* n.2.

    **B.**    **The CIA's *Glomar* Response Is Logically and Plausibly Supported by the Shiner Declaration**

The Times' argument that the Shiner Declaration is insufficient to justify the CIA's *Glomar* response, Times' Motion at 26-29, is wrong.  As an initial matter, the Times devotes a significant portion of its cross-motion to an effort to undermine the presumptions that attach to judicial review in FOIA cases, and particularly the additional considerations afforded to the Government in FOIA litigation regarding national security determinations.  *See* Times' Motion at 16-22.  There can be no dispute, however, that in all FOIA matters, agency declarations are "accorded a presumption of good faith," *Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994), and "in the national security context," courts "must accord *substantial weight* to an agency's affidavit." *ACLU*, 681 F.3d at 69 (emphasis in original); *N.Y. Times Co.*, 756 F.3d at 112.  To prevail on its motion for summary judgment, the CIA must provide a declaration that "describe[s] the justifications for nondisclosure with reasonably specific detail, demonstrate[s] that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith.  Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wilner*, 592 F.3d at 73.

The Times' three arguments that the Shiner Declaration is insufficient are unsupported by any case law and are unavailing.  First, the Times suggests—without any support—that "acknowledging the existence of the three documents would say absolutely nothing about secret

7

sources and methods, which are protected under Exemption 3 of the National Security Act." Times' Motion at 27.  This assertion is flatly contradicted by the Shiner Declaration, which must be afforded "substantial weight."  *Wilner*, 592 F.3d at 68; *see also N.Y. Times Co.*, 756 F.3d at 112.  The declaration states that "[i]f the CIA were to provide responses either confirming or denying that it possesses records concerning any particular topic or subject at a specific point in time, this admission could identify human intelligence sources, as well as reveal information about the CIA's specific intelligence interests or activities, in the absence of an acknowledged overt connection to this topic."  Shiner Decl. ¶ 30.  Furthermore, "acknowledging the existence or nonexistence of records reasonably could be expected to cause damage to the national security by indicating whether or not the CIA maintained any human intelligence sources related to the subjects implicated by the request, and identifying the access or lack of access any such sources had to intelligence concerning the subjects implicated by the request."  *Id.*  Likewise, "acknowledging that the CIA possesses the requested records would reveal that the subject was a target of intelligence collection," and "[a]cknowledging the absence of such records would reveal that the subject was not a target of collection."  *Id.* ¶ 35.  "In either case, such an admission would implicate intelligence sources and methods in a manner harmful to U.S. national security because it would reveal to the plaintiff and the public, including foreign intelligence services and targets, facts about the CIA's clandestine intelligence activities."  *Id.*  In particular, such admissions could allow adversaries to more effectively "arrange their counterintelligence and security resources" based on information regarding how the CIA "is allocating its resources."  *Id.* ¶ 34.  The declaration thus logically and plausibly explains the basis for the CIA's *Glomar*, *see Wilner*, 592 F.3d at 73, and the Times has not provided any evidence that contradicts the assertions set forth in the Shiner Declaration.  Indeed, in *Florez v. CIA*, No.

8

14-cv-1002 (SHS), 2015 WL 728190, at *6, *8 (S.D.N.Y. Feb. 19, 2015), the court found a declaration providing similar justifications and language sufficient to support a *Glomar* response.

Second, the Times incorrectly argues that the CIA claims that "it can avoid acknowledging that documents [exist] on the grounds that acknowledgment would 'weigh in' on the credibility of The Times' anonymous sources." Times' Motion at 27. The Times takes out of context a portion of the Shiner Declaration that addresses the fact that no official acknowledgment has occurred. Specifically, the declaration explains that "if the CIA were to confirm or deny the existence of the purported records, it would tend to confirm whether all of the information provided to the plaintiff by an unnamed or anonymous source - the records themselves, or the approximate dates and titles of the records - is accurate. Consequently, the CIA's simple response to an unauthorized disclosure of information could cause greater harm by weighing in on the veracity of a source of an anonymous leak and tending to confirm whether all of the information (e.g., related intelligence activities) documented within the purported records is accurate." Shiner Decl. ¶ 17. This portion of the Shiner declaration highlights a potential harm of disclosing the existence or nonexistence of responsive records where the request is for specific purported documents that may have been obtained through an unauthorized disclosure. It in no way undermines (and in fact further supports) the CIA's basis for asserting a *Glomar* response.

Finally, the Times incorrectly argues that the CIA's *Glomar* is not justified by the fact that acknowledging the existence or nonexistence of the purported records would disclose whether or not the CIA has or had an intelligence interest in the subjects implicated by the request.[4] Times' Motion at 28-29. As discussed in greater detail in the CIA Motion, "if the CIA

---

[4] The Times' argument also incorrectly assumes the existence of the requested documents, which has not been acknowledged.

9

were to confirm the existence of the records requested by the plaintiff after having found no responsive records reflecting an open or otherwise acknowledged connection to the records sought, such confirmation would indicate the CIA's interest in such matters.  On the other hand, if the CIA were to respond by admitting that it did not possess any responsive records, it would indicate that the CIA had no involvement or interest in such matters at a specific time. . . . [E]ither confirmation would reveal sensitive information about the CIA's intelligence interests, capabilities, authorities, and resources that is protected from disclosure by E.O. 13526 and statute." *Id.* ¶ 16.  Again, the Shiner Declaration logically and plausibly explains that the disclosure of the existence or nonexistence of the requested records could reasonably be expected to cause damage to the national security insofar as it "would tend to reveal the scope of the CIA's intelligence activities, and potentially the CIA's sources and methods of collection." Shiner Decl. ¶ 25.  The Times' suggestion that the CIA has the burden of providing additional justification as to the applicability of Executive Order 13526 or Exemption 1 is wrong.  *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) (rejecting plaintiff's argument that CIA should be required to explain "whether the passage of time . . . rendered classification less necessary"); *Amnesty Int'l USA*, 728 F. Supp. 2d at 511-12 (rejecting argument that acknowledging the existence of the requested documents "cannot possibly harm national security since the information is already public knowledge" as "insufficient to challenge the CIA's affidavits" because nothing in public disclosures contradicts declaration's "conclusions that the release of the information would be detrimental to national security"); *see also Florez*, 2015 WL 728190, at *5-*6 (approving similar justifications and language sufficient to support *Glomar* response based on Exemption 1).

## CONCLUSION

For the reasons stated herein, the CIA's motion for summary judgment should be granted, and the Times' cross-motion should be denied.

Dated: New York, New York
July 26, 2016

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for Defendant

By:  /s/ *Leigh Wasserstrom*
LEIGH WASSERSTROM
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone:  (212) 637-3274
Facsimile:  (212) 637-2786
E-mail:  leigh.wasserstrom@usdoj.gov