UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————x

THE NEW YORK TIMES COMPANY,                    :
                                               :
                          Plaintiff,           :
                                               :            16 Civ. 3098 (JSR)
                                               :
                                               :
                       - against -             :
                                               :
CENTRAL INTELLIGENCE AGENCY,                   :
                                               :
                          Defendant.           :

———————————————————————————x


## PLAINTIFF'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF ITS CROSS-MOTION
## FOR PARTIAL SUMMARY JUDGMENT

David E. McCraw
Tali R. Leinwand
The New York Times Company
Legal Department
620 Eighth Avenue
New York, NY 10018
Phone: (212) 556-4031
Facsimile: (212) 556-1009
Email: mccraw@nytimes.com
*Counsel for Plaintiff*

60569

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT .......................................................................................1

ARGUMENT...................................................................................................................1

    I.    THE COURTS' GLOMAR ANALYSIS FOLLOWS A TWO-STEP PROCESS
          THAT TREATS OFFICIAL DISCLOSURES VERY DIFFERENTLY AT EACH
          STEP ..................................................................................................................1

    II.   THE CIA'S LEGAL ARGUMENTS CANNOT CURE THE DEFICIENCIES IN
          MS. SHINER'S DECLARATION ...................................................................6

CONCLUSION..............................................................................................................10

60569

## <u>TABLE OF AUTHORITIES</u>

**CASES**

<u>ACLU v. CIA</u>, 710 F.3d 422 (D.C. Cir. 2013) ...............................................................................2

<u>ACLU v. Dep't of Justice</u>, No. 12 Civ. 794 (CM), 2015 U.S. Dist. LEXIS 95790 (S.D.N.Y. July 16, 2015) ....................................................................................................................................8

<u>Florez v. CIA</u>, No. 15-1055-cv, 2016 U.S. App. LEXIS 12925 (2d Cir. July 14, 2016) ...... *passim*

<u>Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enforcement Agency</u>, 827 F. Supp. 2d 242 (S.D.N.Y. 2011) .......................................................................................................2

<u>N.Y. Times Co. v. Dep't of Justice</u>, 756 F.3d 100 (2d Cir. 2014) ........................................ *passim*

<u>Wilner v. NSA</u>, 592 F.3d 60 (2d Cir. 2009) ........................................................................2, 3, 7

<u>Wilson v. CIA</u>, 586 F.3d 171 (2d Cir. 2009) ...............................................................................7

## PRELIMINARY STATEMENT

The Times respectfully submits this reply memorandum of law in further support of its cross-motion for partial summary.[1]  Over the last two years, the Second Circuit has imposed significant limits on an agency's use of a Glomar response in two decisions:  N.Y. Times Co. v. Dep't of Justice, 756 F.3d 100 (2d Cir. 2014), and Florez v. CIA, No. 15-1055-cv, 2016 U.S. App. LEXIS 12925 (2d Cir. July 14, 2016).  The CIA tries to avoid those limits by, first, burying the Florez decision in a footnote and ignoring its important holding about the use of official disclosures in Glomar cases and, second, misapprehending the critical facts in N.Y. Times that led the Second Circuit to reject a Glomar response.  Those cases demonstrate why the Glomar response here cannot stand.

## ARGUMENT

### I.

### THE COURTS' GLOMAR ANALYSIS FOLLOWS A TWO-STEP PROCESS THAT TREATS OFFICIAL DISCLOSURES VERY DIFFERENTLY AT EACH STEP

In assessing whether an agency is permitted to give a Glomar or "no number, no list" response, the Second Circuit has said, "[W]e agree with the D.C. Circuit that 'such a response would only be justified *in unusual circumstances*, and only by *a particularly persuasive*

---

[1]   Defined terms in this reply have the same meaning as in The Times's moving memorandum of law.

*affidavit*."[2]  N.Y. Times, 756 F.3d at 122 (emphasis added); see also Nat'l Day Laborer Org.

Network v. U.S. Immigration & Customs Enforcement Agency, 827 F. Supp. 2d 242, 253–54

(S.D.N.Y. 2011) (Glomar "applies only in rare cases").  In this case, rather than submit a

"particularly persuasive affidavit," the CIA instead relies on boilerplate truisms about the

importance of secrecy and ignores without explanation over a decade of official Government

disclosures showing the CIA's interest and role in investigating, monitoring, and neutralizing

Iraq's chemical weapons.

The Government places great weight on a statement from Wilner v. NSA, 592 F.3d 60,

70 (2d Cir. 2009), that an "agency only loses its ability to provide a Glomar response when the

existence or nonexistence of the particular records covered by the Glomar response has been

officially and publicly disclosed."  (See Amended Memorandum of Law in Further Support of

Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for

Summary Judgment ("Amend. CIA Mem.") at 2.)  That is hardly a shocking proposition – and a

complete red herring in this case.  The sentence states the obvious:  An agency that has officially

acknowledged having the documents sought by a FOIA requester cannot then turn around, give a

Glomar response, and pretend it does not have those same documents.  That, in precise terms, is

the "official acknowledgement doctrine" of FOIA.  See Florez, 2016 U.S. App. LEXIS 12925, at

*18–19.  The courts have explained further that an agency's disclosure of an interest in a topic

does not serve as an official acknowledgement of documents about that topic.  See Wilner, 592

F.3d at 69–70.  All of that is beside the point here because The Times does not claim that the

CIA has acknowledged the three reports at issue.

---

[2]   A "no number, no list" response is one in which an agency acknowledges the existence of
relevant documents but does not specify how many it possesses and does not list them on a
Vaughn Index.  See ACLU v. CIA, 710 F.3d 422, 433 (D.C. Cir. 2013).

But that waiver analysis is only the first step in a court's review of a Glomar response. As <u>Wilner</u>, <u>N.Y. Times</u>, and <u>Florez</u> demonstrate, there is a second step:  To invoke Glomar and refuse to admit or deny the existence of documents, the agency "must tether its refusal to one of the nine FOIA exemptions."  <u>Wilner</u>, 593 F.3d at 71 (internal citations omitted).  A Glomar response can be employed only if the act of confirming or denying the existence of the requested records would itself disclose a secret that is protected under FOIA.  <u>Id</u>.  If the "secret" proffered to justify the Glomar response is no secret at all, then the Glomar response cannot stand.

That is precisely what happened in <u>N.Y. Times</u>.  The Glomar response there was premised on the claim that whether or not the CIA was involved in targeted killings was a national security secret.  The Second Circuit pointed out, however, that Leon Panetta, the former CIA Director, had publicly identified the CIA as an agency with an operational role in targeted drone killings.  <u>N.Y. Times</u>, 756 F.3d at 122.  "With CIA identified, the Appellees' main argument for the use of Glomar and no number, no list responses evaporates."  <u>Id</u>.

In other words – and this distinction is lost on the CIA here – official disclosures are critically important in this second step in the Glomar analysis even if they do not qualify as an official acknowledgement of particular records.

That point was driven home in <u>Florez</u>, 2016 U.S. App. LEXIS 12925**,** where the CIA provided a Glomar response to a FOIA requester seeking documents about his late father, a Cuban diplomat from the 1960s who later defected.  Between the time of the District Court decision (upholding the Glomar response) and the Circuit's decision (remanding the case), the FBI released a trove of documents showing that the father had been the subject of intense U.S. intelligence interest and surveillance.  <u>Id.</u> at *4.  While the FBI release could not serve as an official acknowledgement of the existence of particular CIA documents, the Second Circuit

found that the FBI materials had to be considered by the district court in judging "an agency's independent obligation to 'carry its burden by submitting declarations giving reasonably detailed explanations why any withheld documents fall within an exemption.'" Id. at *16 (internal citation omitted).  Responding to a dissent, the Second Circuit emphasized the point again:  "[A] third party agency's disclosures cannot waive the asserting agency's right to a Glomar response, but such disclosures may well shift the factual groundwork upon which a district court assesses the merits of such a response."  Id. at *17.

The Second Circuit underscored how important it was for a reviewing court to look at the full record in assessing the validity of the Glomar claim:  "[C]ategorically excluding public documents as evidence when reviewing a Glomar response flies in the face of our own instruction that '[i]n evaluating an agency's Glomar response . . . [t]he court should attempt to create as complete a public record as is possible.'"  Id. at *20 (internal citation omitted).   In light of Florez, the CIA's objection that some of the documents cited by The Times come from other agencies is particularly misguided.  (See Amend. CIA Mem. at 4.)  "It defies reason to instruct a district court to deliberately bury its head in the sand to relevant and contradictory record evidence solely because that evidence does not come from the very same agency seeking to assert a Glomar response in order to avoid the strictures of FOIA."  Florez, 2016 U.S. App. LEXIS 12925 at *20–21.

The CIA does its best to hide from the Second Circuit's Florez decision – with its detailed and highly relevant explanation of how courts should weigh official disclosures – by relegating the opinion to a footnote laced with carefully spliced quotations.  (See Amend. CIA Mem. at 6 n. 3.)  As for N.Y. Times, the CIA relies on a distinction that does not exist.  The CIA says that the failed Glomar response in N.Y. Times had been "premised on the need to protect a

4

fact that has been officially acknowledged" and the same is not true in this case. (Amend. CIA

Mem. at 6.) But that statement fails to grasp the role of official disclosures in this case.[3] In N.Y.

Times, Mr. Panetta revealed the professed secret behind the Glomar response (whether the CIA

was involved in drone strikes) just as here the multiple documents cited by The Times reveal the

professed secret behind this Glomar (whether the CIA was involved in finding, monitoring, and

neutralizing chemical warheads after the removal of Saddam Hussein). (See McCraw Decl. Exs.

B–M.)

    All of those official disclosures stand on precisely the same footing as Mr. Panetta's

public statements in N.Y. Times and the FBI's disclosures of an intelligence interest in the

former Cuban ambassador in Florez. They are powerful evidence contradicting the CIA's claim

that confirming (or denying) the existence of the documents sought by the FOIA request "could

reasonably be expected to cause identifiable or describable damage to the national security," as

Exemption 1 requires, or would disclose intelligence sources and methods, as Exemption 3

requires. See Plaintiff's Memorandum of Law in Support of Its Cross-Motion for Partial

Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment ("Times

Mem.") at 15.)

    Once that evidence has been placed in the record, it becomes incumbent on the CIA to

put in a "particularly persuasive affidavit" to show why the Court should discount the evidence

and uphold the CIA's Glomar response. N.Y. Times, 756 F.3d at 122. The Government has not

---

[3] The CIA's discussion of N.Y. Times also seems to contradict its earlier position that official
acknowledgment applies only to specific documents, not to facts. (See Amend. CIA Mem. at 2.)

done so.  It has made no factual response at all to the evidence.[4]  Instead, as discussed below, it tries to get by with legal arguments that plainly fail to neutralize the factual showing made by The Times.

## II.

### THE CIA'S LEGAL ARGUMENTS CANNOT CURE THE DEFICIENCIES IN MS. SHINER'S DECLARATION

The CIA has said that confirming or denying the existence of the documents would disclose whether the CIA had "an intelligence interest" in Iraqi chemical weapons or, alternatively, "would tend to reveal the scope of the CIA's intelligence activities, and potentially the CIA's sources and methods of collection."  (See Shiner Decl. ¶¶ 16, 20, 25, 27; Amend. CIA Mem. at 6.)  But however the CIA frames the alleged secret to be protected, it cannot ignore the disclosures identified by The Times.  As the CIA grudgingly says (with a huge dose of understatement), The Times's documents "may reflect the CIA's awareness and discussion of the existence of chemical weapons in Iraq during the time periods they address."   (See Amend. CIA Mem. at 6–7.)

Of course the documents show much more than that:  They show the deep interest of the CIA (as well as of other agencies) in Saddam Hussein's chemical weapons, the CIA's role in

---

[4]   The CIA's decision not to put in a factual affidavit to address the official disclosures is notable in light of prior cases.  When Florez was before the District Court, the plaintiff responded to the CIA's motion for summary judgment by pointing out that the CIA had in fact publicly posted documents about Ambassador Florez on the agency's website, a discovery that seemed to undermine the CIA's Glomar response.  (See Exs. A and B to Declaration of David E. McCraw, dated May 14, 2014, Florez v. CIA, 14 Civ. 1002 (SHS), Dkt. No. 16.)   At that point, as would be expected under the law, the CIA put in a supplemental declaration to address the factual issue raised by the discovered documents and provide a new justification for its Glomar response.   (See Supplemental Declaration of Martha M. Lutz, dated June 20, 2014, Florez v. CIA, 14 Civ. 1002 (SHS), Dkt. No. 25.)

trying to locate them, and the risks that would be posed by their discovery.  (See Times Mem. at 5–11.)  Forced by the facts to finally be clear, the CIA ultimately makes the rickety argument that the secret behind the Glomar is whether the CIA had an interest in the weapons during the "time period relevant" to the requested documents.  (See Amend. CIA Mem. at 7.)

The documents sought by The Times were published in December 2006, March 2007, and August 2007.  (Times Mem. at 2 n. 2.)  The official disclosures cited in The Times's moving papers document a CIA interest that spreads across the years, both before the invasion of Iraq and after.  And it is no secret that the U.S. program to find and neutralize the weapons was in place in late 2006 and early 2007 and continued until 2011.  (See McCraw Decl. Ex. A.)  The period from 2006 to 2007 falls in the midst of the time frame when American service personnel were being injured because of the bungled management of the disarmament project.  (Id.)

The burden for the CIA under Wilner, N.Y. Times, and Florez is to show with a "particularly persuasive affidavit" why revealing whether the CIA was interested in chemical weapons in those three months has to be kept secret from the public.  The best that the CIA can do is point out that its declarant, in making all those generalized statements about the importance of secrecy to the intelligence services, inserted the words "at a specific time" into a sentence.  (See Amend. CIA Mem. at 10; Shiner Decl. ¶ 16.)

Stuck with its inadequate factual record, the CIA tries a variety of legal arguments, none of which can fill the yawning gap in its case.  It bickers about what the current state of the law is in respect to official acknowledgement after N.Y. Times.  (See Amend. CIA Mem. at 3; Times Mem. at 20.)  But in N.Y. Times itself, the Second Circuit conceded that the "rigid application" of the accepted test from Wilson v. CIA, 586 F.3d 171 (2d Cir. 2009), "may not be warranted in view of its questionable provenance."  N.Y. Times, 756 F.3d at 120 n. 20.  Judge McMahon, to

whom the N.Y. Times case was remanded, wrote, "I deeply regret that the Court of Appeals was not more definitive in its discussion of how closely an official acknowledgement had to track information contained in a document." ACLU v. Dep't of Justice, No. 12 Civ. 794 (CM), 2015 U.S. Dist. LEXIS 95790, at *7 (S.D.N.Y. July 16, 2015). In any event, The Times does not contend that the CIA has officially acknowledged the three documents at issue, only that official disclosures about the agency's role and interest in Iraqi chemical warheads eviscerate the CIA's claim that the existence or nonexistence of the three documents at issue must remain a secret.

Next, the CIA reflexively returns to the argument that its declaration is entitled to a "presumption of good faith." (See Amend. CIA Mem. at 7.) But The Times is not challenging the accuracy or honesty of the CIA's declarant; it is challenging the level of detail and specificity of the declaration – in particular, its failure to address the evidence presented by The Times and to make the case for why the CIA needs to impose secrecy on its activities in Iraq in 2006-2007 but not at other times.[5]

Finally, the CIA attempts to convince the Court that its platitude-lined declaration is "reasonably detailed" enough to meet the "logical and plausible" test. (See id. at 7–10; Times Mem. 18–24.) Read generously, Ms. Shiner's declaration makes the case that the CIA has secret sources, that it has secret interests, that it engages in clandestine intelligence activities, and that enemies may change their operations based on what they learn about the CIA. (Id. at 8.) But that is always going to be true – and that is the problem with the CIA's case. The CIA has already disclosed its interest and role in locating, monitoring, and neutralizing the Iraqi chemical

---

[5]   The CIA gamely floats the argument that it is also entitled to use a Glomar response to avoid giving credence to an anonymous source who may have leaked documents to The Times. (See Amend. CIA Mem. at 9.) Whether that is so or not, the CIA needs to show why that sort of agency interest is covered by either Exemption 1 or Exemption 3. (See Times Mem. at 22–23.) It has not done so.

60569                                              8

warheads in various time periods.  During each of those time periods, everything that Ms. Shiner says applied with full force.  Yet the CIA was able to acknowledge its interests and activities without jeopardizing national security.  So the generalized case that Ms. Shine makes does not explain at all when the CIA's interest in Iraqi chemical weapons has to be secret and when it does not – and that means it is neither a logical nor plausible explanation for why secrecy is required as to the three months now at issue.

When the CIA says, "[T]he Times has not provided any evidence that contradicts the assertions set forth in the Shiner Declaration" (Amend. CIA Mem. at 8), it misses the point.  Much of what Ms. Shiner says is undoubtedly true – it just does not make the case for the specific secrecy sought here.  The relevant contradiction is the one that exists between the secrecy being claimed by the CIA and the multiple disclosures that the CIA has made about its interest and role in locating, monitoring, and neutralizing the Iraqi chemical weapons program.  The CIA does no better with its string citation to Glomar cases in which declarations have been found to be adequate.  (See id. at 10.)  As Florez makes plain, all Glomar cases turn on their own facts and circumstances – what Florez calls the "factual groundwork":  what is known, what has been officially disclosed, what the claimed secret is, and what the Government has offered as the factual evidence to support that secrecy.  See Florez, 2016 U.S. App. LEXIS 12925, at *17.

Those factors here belie the CIA's Glomar response.  The CIA should be required to acknowledge the documents and produce them subject to any redactions that are warranted under FOIA, at which point The Times can then challenge any improper redactions.

## <u>CONCLUSION</u>

For each and every of the reasons set forth above and its moving memorandum of law, The Times respectfully requests that this Court deny the CIA's motion for summary judgment and grant The Times's cross-motion for partial summary judgment by directing the CIA to (i) acknowledge the three documents at issue, (ii) produce the three documents subject to any redactions the CIA believes can be made under FOIA, and (iii) set further motion practice for any challenges that The Times has to such redactions.  Further The Times respectfully requests that the Court award The Times the costs of these proceedings, including reasonable attorney's fees, as expressly permitted by 5 U.S.C. § 552(a)(4)(E), and grant such other and further relief as the Court deems just and proper.

Dated: New York, NY
        August 3, 2016

                                   Respectfully submitted,

                                   By: _____/s/ David E. McCraw_____
                                           David E. McCraw
                                           Tali R. Leinwand
                                           The New York Times Company
                                           Legal Department
                                           620 8th Avenue
                                           New York, NY 10018
                                           Phone: (212) 556-4031
                                           Facsimile: (212) 556-1009
                                           Email: mccrad@nytimes.com
                                           *Counsel for Plaintiff*

60569

10