UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NEW YORK TIMES COMPANY, Plaintiff, | |
| - against - | No. 16-cv-3098 (JSR) |
| CENTRAL INTELLIGENCE AGENCY, Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 5 U.S.C. § 552(a)(4)(E)**

David E. McCraw, Esq.
Legal Department
The New York Times Company
620 Eighth Avenue, 18th Floor
New York, NY 10018
phone: (212) 556-4031
fax: (212) 556-1009
e-mail: mccraw@nytimes.com
*Counsel for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

FACTUAL BACKGROUND ........ 1

ARGUMENT ........ 4

I. THE TIMES IS ELIGIBLE FOR AND ENTITLED TO RECOVER FEES AND COSTS ........ 5
   A. THE TIMES'S ELIGIBILITY FOR FEES AND COSTS ........ 5
   B. THE TIMES'S ENTITLEMENT TO FEES AND COSTS ........ 5
II. THE ATTORNEYS' FEES THE TIMES SEEKS ARE REASONABLE ........ 8
III. THE COURT SHOULD AWARD "FEES ON FEES" ........ 10

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

## CASES

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110 (2d Cir. 2007) ....8

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008) ....4

*Bacote v. Riverbay Corp.*, No. 16-cv-1599 (GHW), 2016 U.S. Dist. LEXIS 180213 (S.D.N.Y. Dec. 29, 2016)....8

*Blum v. Stenson*, 465 U.S. 886 (1984). ....8

*Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 825 F. Supp. 2d 226 (D.D.C. 2011) ....10

*Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 80 F. Supp. 3d 1 (D.D.C. 2015)9

*City of Inglewood v. Teixeira*, No. 15-cv-1815, 2015 U.S. Dist. LEXIS 143380 (C.D. Cal. Oct. 8, 2015) ....9

*Copeland v. Dist. of Columbia*, No. 13-cv-837, 2016 U.S. Dist. LEXIS 129532 (D.D.C. Sept. 22, 2016) ....8

*Davy v. CIA*, 550 F.3d 1155 (D.C. Cir. 2008) .... 5-7

*Doe v. Quest Diagnostics, Inc.*, No. 15-cv-8992 (LGS), 2016 U.S. Dist. LEXIS 84542 (S.D.N.Y. June 29, 2016);....8

*Florez v. CIA*, No. 14-cv-1002 (SHS), 2015 U.S. Dist. LEXIS 20009 (S.D.N.Y. Feb. 19, 2015)..2

*Florez v. CIA*, 829 F.3d 178 (2d Cir. 2016)....3, 7

*Hiken v. Dep't of Def.*, 836 F.3d 1037 (9th Cir. 2016) .... 8-9

*Kay v. Ehrler*, 499 U.S. 432 (1991) ....4

*Katz v. Dep't of Justice*, 498 F. Supp. 177 (S.D.N.Y. 1979) ....6

*LaSalle Extension Univ. v. FTC*, 627 F.2d 481 (D.C. Cir. 1980) ....4

*Nat'l Sec. Counselors v. CIA*, 811 F.3d 22 (D.C. Cir. 2016)....4

*Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143 (2d Cir. 2009)....10

*Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976)....1

*Pietrangelo v. U.S. Army*, 568 F.3d 341 (2d Cir. 2009) .......... 4-5

*Public.Resources.Org v. IRS*, No. 13-cv-2789, 2015 U.S. Dist. LEXIS 175943 (N.D. Cal. Nov. 20, 2015) .......... 9

*Rosenfeld v. Dep't of Justice*, 903 F. Supp. 2d 859 (N.D. Cal. 2012) .......... 9

*Sierra Club v. EPA*, 75 F. Supp. 3d 1125 (N.D. Cal. 2014) .......... 9

*Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170 (2d Cir. 2009) .......... 8

*Triumph Constr. Corp. v. N.Y.C. Council of Carpenters Pension Fund*, No. 12-cv-8297 (KPF), 2014 U.S. Dist. LEXIS 169505 (S.D.N.Y. Dec. 8, 2014) .......... 4

*Vt. Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509 (2d Cir. 1976) .......... 6

*Warren v. Colvin*, 744 F.3d 841 (2d Cir. 2014) .......... 4-5

**STATUTES AND LEGISLATIVE HISTORY**

5 U.S.C. § 552 .......... 1, 4-5

50 U.S.C. § 3024 .......... 1

50 U.S.C. § 3507 .......... 1

H.R. REP. NO. 93-1380 (1974) (Conf. Rep.) .......... 6

S. REP. NO. 93-854 (1974) .......... 6-7

**PRELIMINARY STATEMENT**

Plaintiff The New York Times Company ("The Times") respectfully submits this memorandum of law in support of its motion for attorneys' fees and costs under the fee-shifting provision of the Freedom of Information Act ("FOIA"). 5 U.S.C. § 552(a)(4)(E)(i). The FOIA request at issue here should never have reached litigation. Had Defendant Central Intelligence Agency ("CIA") done what the law requires of it, the parties would never have had to set foot in a courtroom. Instead, the CIA did all it could to circumvent FOIA. The result was needless expenditure of judicial resources, CIA and Justice Department resources, and—the reason for this motion—The Times's resources. FOIA compels the CIA to pay The Times reasonable attorneys' fees and costs.

**FACTUAL BACKGROUND**

The roots of this litigation reach back to October 22, 2013, when The Times submitted a FOIA request to the CIA seeking three specific documents pertaining to the recovery of chemical weapons in Iraq. (Declaration of David E. McCraw ("McCraw Decl.") ¶¶ 2-3 (Jan. 25, 2017); Declaration of Chris Chivers ("Chivers Decl.") ¶ 2 (Jan. 23, 2017).) The CIA responded on December 30, 2013, with a *Glomar* response,[1] relying on Exemptions 1 and 3 to FOIA's disclosure mandate, 5 U.S.C. § 552(b)(1), (b)(3). (*Id.* ¶ 4.) Specifically, the CIA contended that the fact of the existence or non-existence of the requested records would disclose a properly classified fact and information protected by § 6 of the Central Intelligence Agency Act of 1949 (codified at 50 U.S.C. § 3507) and § 102A(i)(1) the National Security Act of 1947 (codified at 50 U.S.C. § 3024(i)(1)). The Times timely appealed the *Glomar* response, which the CIA affirmed. (McCraw Decl. ¶¶ 5-6.)

[1] Pursuant to the *Glomar* doctrine, an agency can decline to reveal whether it has responsive documents when the fact of possession or non-possession is itself exempt information under FOIA. *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976).

In the intervening months, The Times published an interactive news feature and accompanying print article that exposed information closely related to the three requested records: that while neutralizing chemical weapons stockpiles in post-invasion Iraq, scores of American service personnel had suffered serious injuries (*id.* ¶ 7; Chivers Decl. ¶¶ 4-5). *See* C.J. Chivers, *The Secret Casualties of Iraq's Abandoned Chemical Weapons*, N.Y. TIMES, Oct. 14, 2014, *available at* https://nyti.ms/1EVJYeW; C.J. Chivers, *Abandoned Chemical Weapons and Secret Casualties in Iraq*, N.Y. TIMES, Oct. 15, 2014, at A1. The Times held out hope that the publicity and subsequent government inquiry into the revelations might spur the CIA to disclose the three requested documents. (McCraw Decl. ¶ 9; *see also* Chivers Decl. ¶ 6.) That hope proved to be in vain, and The Times filed suit on April 26, 2016. (McCraw Decl. ¶ 10.)

Before the Court, the CIA maintained its *Glomar* request. (*Id.* ¶ 11.) In its June 13, 2016, motion for summary judgment, the CIA contended that disclosing the existence or nonexistence of the requested records would reveal whether the CIA had an intelligence interest in Iraqi chemical weapons and post-invasion destruction efforts. (*Id.*) The Times responded on July 1, 2016, seeking partial summary judgment on the *Glomar* issue. (*Id.* ¶ 12.) The Times's challenge to the propriety of the *Glomar* response was, by necessity, fact-intensive and required a substantial amount of research and work summarizing and presenting that work to the Court. (*Id.* ¶ 13.) Its research proved fruitful: The Times discovered more than nine documents that revealed the CIA's involvement in monitoring and neutralizing Iraqi chemical weapons. (*Id.* ¶ 14.)

The CIA, confronted with these prior disclosures, nevertheless continued to defend its *Glomar* response. (*Id.* ¶ 15.) Its attack on The Times's arguments relied in substantial measure on the district court opinion in *Florez v. CIA*, No. 14-CV-1002 (SHS), 2015 U.S. Dist. LEXIS 20009 (S.D.N.Y. Feb. 19, 2015). (McCraw Decl. ¶ 15.) Inexplicably, given that the CIA was a

party to the *Florez* case, it neglected to mention that the district court's ruling in *Florez* had been set aside by the Second Circuit over a week earlier. *See Florez v. CIA*, 829 F.3d 178 (2d Cir. 2016). The CIA subsequently filed an amended reply brief. (McCraw Decl. ¶ 16.) In it, the CIA persisted in its defense of its *Glomar* response, despite the Second Circuit's ruling in *Florez*, which it largely relegated to a footnote. (*Id.*)

At oral argument—after The Times filed its own reply brief—the Court referred on several occasions to the prior disclosures discovered by The Times and questioned how the CIA could justify its *Glomar* response in light of them. (*Id.* ¶¶ 17-18.) Afterward, the CIA, evidently worried that it had not met its burden, sought and received—over The Times's objection—leave to file a classified declaration to explain further the basis for its *Glomar* response. (*Id.* ¶¶ 19-20.) It never followed through. Instead, nearly two weeks after the Court granted leave to submit the declaration, the CIA abandoned its *Glomar* response and withdrew its summary judgment motion. (*Id.* ¶ 21.)

In November—over three years after the original FOIA request—the CIA produced the three requested reports to The Times in redacted form. (*Id.* ¶ 22.) In order to decide whether to challenge any of the CIA's redactions, The Times reviewed the reports, analyzing them in light of the prior disclosures and the records produced in the companion case, *New York Times v. Department of the Army*, No. 16-cv-3123 (JSR) (S.D.N.Y.). Upon completing its review, The Times informed the CIA that it planned to challenge four categories of redaction. (McCraw Decl. ¶ 23.) The CIA agreed to disclose three of the four categories, and The Times, in return, agreed to drop its challenge to the fourth. (*Id.*)

With the merits resolved, the parties attempted to reach an agreement as to attorneys' fees and costs. The parties failed to reach an agreement, and this motion ensued.

## ARGUMENT

Under FOIA's fee-shifting provision, courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). This fees provision serves two purposes: (1) "to encourage [FOIA] suits that benefit the public interest" and (2) to provide "compensation for enduring an agency's unreasonable obduracy in refusing to comply with [FOIA's] requirements." *LaSalle Extension Univ. v. FTC*, 627 F.2d 481, 484 (D.C. Cir. 1980). Not surprisingly given its purpose, FOIA's fee-shifting provision applies to in-house counsel representing organizational litigants. *See Nat'l Sec. Counselors v. CIA*, 811 F.3d 22, 28-33 (D.C. Cir. 2016).[2] In adjudicating claims for fees under FOIA, courts undertake a two-step analysis that examines the plaintiff's fee "eligibility" and fee "entitlement." *See Warren v. Colvin*, 744 F.3d 841, 844 (2d Cir. 2014) (per curiam) (outlining analysis); *Pietrangelo v. U.S. Army*, 568 F.3d 341, 343 (2d Cir. 2009) (per curiam) (same). Once the plaintiff is deemed both eligible and entitled, the court determines whether the requested fees are reasonable, pursuant to the "presumptively reasonable fee" method. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 189 (2d Cir. 2008); *see also Triumph Constr. Corp. v. N.Y.C. Council of Carpenters Pension Fund*, No. 12-cv-8297 (KPF), 2014 U.S. Dist. LEXIS 169505, at *8 n.3 (S.D.N.Y. Dec. 8, 2014) (*Arbor Hill* consistent with U.S. Supreme Court decision in *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)).

[2] Although the Second Circuit has not squarely addressed this question, like most other circuits, it has interpreted FOIA's fee-shifting provision as analogous to the federal fee-shifting statute for civil rights cases. *See Pietrangelo v. U.S. Army*, 568 F.3d 341, 344-45 (2d Cir. 2009) (per curiam) (importing into the FOIA context the Supreme Court's analysis of 42 U.S.C. § 1988 in *Kay v. Ehrler*, 499 U.S. 432 (1991)). In *Kay*, 499 U.S. at 436 & n.7, the Supreme Court observed that, because an attorney-client relationship is a predicate for a fee award under § 1988, a court may award attorneys' fees to an organization represented by in-house counsel.

## I. <u>The Times Is Eligible and Entitled to Recover Fees and Costs</u>

### A. The Times's Eligibility for Fees and Costs

A FOIA requester "substantially prevails" when he or she obtains "relief through either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii); *see also Warren*, 744 F.3d at 844-45. In this case, The Times has "substantially prevailed" under the "voluntary or unilateral change in position" standard. *See* 5 U.S.C. § 552(a)(4)(E)(ii)(II). "Congress intended this amendment to prevent federal agencies from denying meritorious FOIA requests, only to voluntarily comply with a request on the eve of trial to avoid liability for litigation costs." *Warren*, 744 F.3d at 845. Here, for three years, the CIA stood by its *Glomar* response. (McCraw Decl. ¶¶ 4-20.) Finally, on September 19, 2016, the CIA changed its position, abandoned its *Glomar*, and thereafter disclosed the three reports to The Times. (*Id.* ¶¶ 21-22.) There is no doubt therefore that The Times is eligible for fees and costs under FOIA's fee-shifting provision.

### B. The Times's Entitlement to Fees and Costs

The Times also satisfies the second step of FOIA's fee-shifting analysis. Courts weigh four factors to determine whether a FOIA plaintiff is entitled to fees and costs: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested information." *Pietrangelo*, 568 F.3d at 343. "Essentially, the first three factors assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage." *Davy v. CIA*, 550

F.3d 1155, 1160 (D.C. Cir. 2008). The fourth factor, meanwhile, evaluates the justification for the government's conduct. *Id.* at 1162-63.

The courts derived that four-factor balancing test from the Senate Report to the 1974 amendments to FOIA, and courts look to that report to guide the entitlement analysis. *See*, *e.g.*, *id.* at 1158-59 & n.2 (citing S. REP. NO. 93-854, at 17-20 (1974)); *Vt. Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509, 512-13 (2d Cir. 1976) (same); *Katz v. Dep't of Justice*, 498 F. Supp. 177, 185-86 (S.D.N.Y. 1979) (same); *see also* H.R. REP. NO. 93-1380, at 9 (1974) (Conf. Rep.) (Conference Committee expressly contemplated courts relying on four factors described in Senate Report, despite their exclusion from the text of the final FOIA amendments legislation). When balancing the four factors, "[e]ach criterion should be considered independently, so that, for example, newsmen would ordinarily recover fees even where the government's defense had a reasonable basis in law, while corporate interests might recover where the withholding was without such basis." S. REP. NO. 93-854, at 19-20.

The first three factors weigh heavily in favor of The Times's entitlement to fees and costs. The three CIA reports The Times requested address a matter of significant public concern: what the government knew about the presence of chemical weapons in post-invasion Iraq and how it addressed the risk they posed to American service members it was asking to neutralize weapons stockpiles. (Chivers Decl. ¶¶ 2-5.) The Times's interest in the CIA reports was and remains purely journalistic: the reports will inform The Times's reporting on this subject going forward. (*Id.* ¶¶ 7-8.) Courts have "long recognized that news interests, regardless of private incentive, generally should not be considered commercial interests for purposes of the second factor." *Davy*, 550 F.3d at 1160 (internal quotation marks omitted); *see also* S. REP. NO. 93-854, at 19.

As to the fourth factor, the CIA had no reasonable basis for issuing a *Glomar* response and maintaining it for three years. Prior public disclosures—including official disclosures made by government agencies, among them the CIA—left it abundantly clear that the CIA had an interest in the recovery and destruction of Iraqi chemical weapons. (McCraw Decl. ¶¶ 13-14.) The CIA knew that disclosure of that fact by acknowledging the three documents would not put national security at risk. It had already made the fact public. The need for secrecy had ceased to be plausible. *Cf. Florez*, 829 F.3d at 184-87.

Moreover, the CIA refused to back away from its unreasonable position, even as the adverse facts mounted. Confronted with the prior public disclosures, the CIA stayed the course. (McCraw Decl. ¶¶ 13-15.) Confronted with the Second Circuit's *Florez* opinion, the CIA stayed the course.[3] (*Id.* ¶¶ 15-16.) Confronted with skeptical questions at oral argument, the CIA stayed the course for weeks, before finally realizing the game was up. (*Id.* ¶¶ 18-21.)

In any event, it is the CIA's burden to demonstrate that its position was reasonable; it is not The Times's burden to demonstrate that the CIA's position was unreasonable. *See Davy*, 550 F.3d at 1163. And even if the CIA can show that its *Glomar* response had a reasonable basis in law, that showing would not undercut The Times's entitlement to fees and costs. "[N]ewsmen would ordinarily recover fees even where the government's defense had a reasonable basis in law . . . ." S. REP. NO. 93-854, at 19-20.

---

[3] The CIA cannot argue that the Second Circuit's opinion in *Florez* was a change in the law that rendered its previously reasonable position unreasonable. The CIA in its amended reply brief dismissed the importance of the case and said it had no effect on its position. In any event, *Florez*, although clarifying, was decided on the basis of existing precedents. *See Florez*, 829 F.3d at 184-85.

## II. The Attorneys' Fees The Times Seeks Are Reasonable

Courts in the Second Circuit calculate attorneys' fees on the basis of "the presumptively reasonable fee," which "boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). It makes no difference whether an attorney is, in fact, charging his or her client fees. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 112 n.2 (2d Cir. 2007); *cf. Blum v. Stenson*, 465 U.S. 886, 894-95 (1984). Satisfactory evidence of the appropriate billing rate includes attorney affidavits and rate determinations in other cases. *See, e.g.*, *Bacote v. Riverbay Corp.*, No. 16-cv-1599 (GHW), 2016 U.S. Dist. LEXIS 180213, at *7-8 (S.D.N.Y. Dec. 29, 2016); *Doe v. Quest Diagnostics, Inc.*, No. 15-cv-8992 (LGS), 2016 U.S. Dist. LEXIS 84542, at *8 (S.D.N.Y. June 29, 2016); *see also Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016); *Copeland v. Dist. of Columbia*, No. 13-cv-837, 2016 U.S. Dist. LEXIS 129532, at *3 (D.D.C. Sept. 22, 2016).

The billing rates sought for The Times's attorneys fall well within the standard range charged by media law firms in the Southern District—$650 per hour for an attorney with experience equivalent to a partner and $400 per hour for an attorney with experience equivalent to a junior associate. (McCraw Decl. ¶¶ 35-38.) That amount is justified in light of the level of experience that the senior Times lawyer brings to FOIA matters, which call for expertise in a specialized body of law. No lawyer has litigated more FOIA cases in this district. (*Id.* ¶¶ 24-28.) The junior attorneys are graduates of Columbia Law School, and one of the attorneys has two years' experience clerking on the D.C. Circuit and in the Eastern District of New York. (*Id.*¶ 36-37.) These rates are in line with those approved in FOIA cases in legal markets comparable to

the Southern District. *See, e.g.*, *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 80 F. Supp. 3d 1, 5 (D.D.C. 2015) (setting rate at between $709 and $771 per hour for litigators with deep experience with and expertise in FOIA litigation in Washington); *Public.Resources.Org v. IRS*, No. 13-cv-2789, 2015 U.S. Dist. LEXIS 175943, at *17-20 (N.D. Cal. Nov. 20, 2015) (approving 2015 rate of $620 per hour for San Francisco media law firm partner and $395 per hour for associate); *Sierra Club v. EPA*, 75 F. Supp. 3d 1125, 1152-53 (N.D. Cal. 2014) (approving rates, between the years 2011 and 2014, ranging from $350 to $650 for associate- and partner-level attorneys); *Rosenfeld v. Dep't of Justice*, 903 F. Supp. 2d 859, 877-78 (N.D. Cal. 2012) (approving rate of $700 per hour in San Francisco); *cf. Hiken*, 836 F.3d at 1044-46 (citing approvingly to FOIA plaintiff's reliance on past fee awards using rates ranging from $350 to $675 per hour); *City of Inglewood v. Teixeira*, No. 15-cv-1815, 2015 U.S. Dist. LEXIS 143380, at *1-3, *14-15 (C.D. Cal. Oct. 8, 2015) (using rates between $335 and $645 per hour for media lawyers, in non-FOIA case, based in San Francisco and Los Angeles). Notably, lawyers in the above-mentioned markets generally bill at rates lower than lawyers based in the Southern District. *See* Catherine Dunn, *Comparing Firm Billing Rates by Practice, City, Size*, CORP. COUNSEL, July 25, 2013, *available at* http://www.corpcounsel.com/id=1202610741068 (citing to study that found partner rates in New York are more than $100 per hour higher than in any other U.S. city).

Likewise, the hours The Times devoted to litigating this case are reasonable, particularly in light of the intensive fact research it was required to do and then present to the Court. (McCraw Decl. ¶¶ 13-14, 39-40, Ex. A.) By way of example, in prior settlements in FOIA cases, The Times has been given amounts ranging from $20,000 to $100,000. (*Id.* at ¶¶ 29-32.) Here The Times had to prepare a complaint, write two substantive briefs and put together a lengthy

declaration with exhibits, prepare for oral argument, write an opposition to the CIA's request for a classified briefing, review the materials ultimately produced in light of previous CIA disclosures, and negotiate with the CIA over additional disclosures. (*Id.* ¶¶ 10, 12-14, 17-18, 20, 22-23.) Even so, the hours reflect an efficient work-rate. (*Id.*¶ 40.) In total, The Times seeks $50,520 in attorneys' fees and $539.86 in costs. (*Id.* ¶¶ 41, 43, Ex. A.)

### III. <u>The Court Should Award "Fees on Fees"</u>

Courts have recognized that, in addition to recovering fees for the time spent on merits litigation, a party is also entitled to recover "fees for fees"—the amount spent on successful motion practice over the fee award. *See Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143, 156 (2d Cir. 2009) (noting that fees for fees "should be granted whenever underlying costs are allowed"); *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 825 F. Supp. 2d 226, 232-33 (D.D.C. 2011) (applying same principle to FOIA's fee-shifting provision). The Times has incurred a total of $9,350 for the 18.5 hours its attorneys have dedicated to obtaining fees in this matter. The Times also anticipates that it will incur an additional $1,500 worth of time drafting a reply brief, for a total of $10,850. (McCraw Decl. ¶ 44.) If the Times prevails on its Motion for Attorneys' Fees and Costs, the Court should award fees for fees.

## <u>CONCLUSION</u>

The Times has substantially prevailed in the proceeding at issue and is eligible and entitled to recover fees under FOIA. The award the Times seeks is reasonable and supported by the attached affidavits and billing records. The Times therefore requests that the Court award it $61,909.86 in fees and costs.

Dated: New York, New York
January 25, 2017

Respectfully submitted,

__/s/ David E. McCraw_________
David E. McCraw, Esq.
Legal Department
The New York Times Company
620 Eighth Avenue, 18th Floor
New York, NY 10018
phone: (212) 556-4031
fax: (212) 556-1009
e-mail: mccraw@nytimes.com
*Counsel for Plaintiff*