UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

THE NEW YORK TIMES COMPANY,

                Plaintiff,

                                                16 Civ. 3098 (JSR)

              - against -

CENTRAL INTELLIGENCE AGENCY,

                Defendant.

---------------------------------------------------------------x

### DECLARATION OF CHRIS CHIVERS IN SUPPORT OF PLAINTIFF'S MOTION FOR COSTS AND ATTORNEYS' FEES

I, CHRISTOPHER (C.J) CHIVERS, state and declare as follows under penalty of perjury:

1. I am a reporter for *The New York Times* newspaper, published by plaintiff The New York Times Company ("The Times"). Over the last four years, I have been the principal reporter for a series of articles about the remnant chemical weapons discovered in Iraq in the years after the fall of Saddam Hussein. I make this declaration from my own personal knowledge in support of The Times's motion for costs and attorneys' fees.

2. In 2013, as part of my work on the chemical weapons stories, I asked the Legal Department at The Times to submit a Freedom of Information Act ("FOIA") request to the Central Intelligence Agency ("CIA") seeking three documents. The documents were CIA accounts of the operations conducted by the U.S. government in which American forces discovered and handled abandoned weapons in Iraq, in some cases after being attacked by them in Improvised Explosive Devices used by anti-American insurgents. I knew from my reporting

61224

1

that U.S. personnel had been injured by exposure to chemical weapons during some of these operations and that those injuries had largely been covered up by U.S. authorities. I also know that in some cases of chemical-weapons discoveries or attacks, the exposed service members had been denied military awards and the long-term health monitoring set forth by certain Department of Defenses guidelines.

3. Based on my reporting, I believed that the three CIA reports would shed light both on what weapons were found and on the injuries sustained by the troops involved in the operation.

4. In October of 2014, *The New York Times* began publishing my stories. The first article revealed that from 2004 to 2011, American and American-trained Iraqi troops repeatedly encountered, and in some instances were seriously wounded by, thousands of chemical weapons that were left over from the arms program that Iraq had amassed in the 1980s during the Iraq-Iran War. A copy of the article is Exhibit A to the Declaration of David E. McCraw, dated July 1, 2016, which was filed with The Times's summary judgment motion.

5. My reporting detailed how the U.S. government had tried to hide critical details of these operations. In 2005 and 2006, for example, military personnel collected hundreds of chemical rockets, warheads, and shells, but the Pentagon did not provide this information to the Senate Select Committee on Intelligence ("SSCI") as it worked in the summer of 2006 examining intelligence claims about Iraq's weapons programs. As a result, the SSCI's final report was inaccurate when it was released in September 2006 and provided a figure for the number of chemical munitions found that was significantly less than the Pentagon's internal tallies. The Article also reported that the Government lost track of the chemical weapons its troops found, left caches unsecured, and did not adequately warn those in the vicinity as the

troops exploded chemical ordnance in the open air. Further, the reporting revealed that the intelligence community, working with the military, purchased remnant nerve-agent weapons from at least one Iraqi source – and never revealed these activities.

6. That original article and others that followed prompted an inquiry by the Pentagon into how these operations why conducted and why the exposures of troops were not handled appropriately. The government ultimately revealed that more than 600 individuals had potentially been exposed during operations involving remnant chemical arms – this after years of denying to me that anyone had been exposed at all.

7. Since the initial round of stories, I have continued to gather information about the Iraqi chemical weapons and the U.S. operation to secure and neutralize those weapons. In 2016, I requested that the Legal Department at The Times pursue litigation over the three CIA documents (as well as Army documents in a companion suit) in hopes of obtaining more information to use in future stories, and to further cover service members exposed and denied recognition or care.

8. It is my intention to continue writing about the Iraqi chemical weapons as new developments emerge. The three CIA documents that were released as a result of this litigation are valuable additions to the volume of information and documents I have collected.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____, ___
January 23, 2017

