UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK TIMES COMPANY,

Plaintiff,

- against -

CENTRAL INTELLIGENCE AGENCY,

Defendant.

No. 16-cv-3098 (JSR)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 5 U.S.C. § 552(a)(4)(E)**

David E. McCraw, Esq.
Legal Department
The New York Times Company
620 Eighth Avenue, 18th Floor
New York, NY 10018
phone: (212) 556-4031
fax: (212) 556-1009
e-mail: mccraw@nytimes.com
*Counsel for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... ii

TABLE OF AUTHORITIES .......... iii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 1

I. THE CIA HAS FAILED TO CREATE A FACTUAL RECORD TO SUPPORT ITS CLAIM THAT THE RELEASE WAS "DISCRETIONARY" BASED ON SOME UNSPECIFIC "EQUITIES" .......... 1

II. THE CIA HAS FAILED TO JUSTIFY ITS OBJECTIONS TO THE REASONABLENESS OF THE TIMES'S FEE APPLICATION .......... 5

CONCLUSION .......... 7

# TABLE OF AUTHORITIES

## CASES

*Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521 (D.C. Cir. 2011) .................. 2-3

*Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 825 F. Supp. 2d 226 (D.D.C. 2011) ..........................................................................................................................6

*Davy v. CIA*, 550 F.3d 1155 (D.C. Cir. 2008) ......................................................................2

*Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216 (D.D.C. 2011) .......... 5-6

*Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61 (D.D.C. 2013) ............ 6-7

*Florez v. CIA*, 829 F.3d 178 (2d Cir. 2016)..........................................................................4

*Hall v. CIA*, 115 F. Supp. 3d 24 (D.D.C. 2015)................................................................. 6-7

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .........................................................................5

*Rosenfeld v. Dep't of Justice*, 904 F. Supp. 2d 988 (N.D. Cal. 2012) ............................................7

*Warren v. Colvin*, 744 F.3d 841 (2d Cir. 2014)....................................................................2

## STATUTES AND LEGISLATIVE HISTORY

5 U.S.C. § 552......................................................................................................... 2-3

OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524..........................................2

H.R. REP. NO. 110-45 (2007).........................................................................................2

S. REP. NO. 110-59 (2007) ...........................................................................................2



#61316v1

## PRELIMINARY STATEMENT

Plaintiff The New York Times Company ("The Times") respectfully submits this reply memorandum of law in further support of its motion for attorneys' fees and costs under the Freedom of Information Act ("FOIA"). In its response, Defendant Central Intelligence Agency ("CIA") asks the Court to believe that its disclosure of the three chemical-weapons reports was simply a "discretionary" act, based on certain unspecified "equities," and not the result of this litigation. It does so even though the CIA had said for years that any disclosure, including whether the documents existed at all, would damage national security. In fact, just weeks before it disclosed the requested documents, it had aggressively argued for complete secrecy at oral argument. The CIA goes on to assert – relying on conjecture and with no factual submission whatsoever – that The Times's fee request should be declared unreasonable.

The CIA cannot hide from the facts: This litigation prompted the CIA to dramatically change its position. That is a textbook description of when fees are to be awarded under FOIA.

## ARGUMENT

### I.

### THE CIA HAS FAILED TO CREATE A FACTUAL RECORD TO SUPPORT ITS CLAIM THAT THE RELEASE WAS "DISCRETIONARY" BASED ON SOME UNSPECIFIED "EQUITIES"

The crux of the CIA's case is that the release here was not required by FOIA but done as a matter of pure agency discretion. (Mem. of Law in Oppo. to Pl.'s Mot. for Fees & Costs ("CIA Mem.") at 5-8.) If agencies could dodge their obligation to pay fees by litigating a case for months and then suddenly declaring a release "discretionary" when they smelled defeat, FOIA's fee-shifting provision would be eviscerated. In fact, when Congress amended the fee

provision in 2007 to add the "voluntary or unilateral change in position" prong, *see* OPEN Government Act of 2007, Pub. L. No. 110-175, § 4, 121 Stat. 2524, 2525, it did so to prevent that sort of dodgy agency behavior: "Congress intended this amendment to prevent federal agencies from denying meritorious FOIA requests, only to voluntarily comply with a request on the eve of trial to avoid liability for litigation costs." *Warren v. Colvin*, 744 F.3d 841, 845 (2d Cir. 2014); *see also* S. REP. NO. 110-59, at 3-4 & n.3 (2007) (amendment intended to neutralize agency "incentive to delay compliance with FOIA requests until just before a court decision that is favorable to the FOIA requestor" in order to evade fee provision); H.R. REP. NO. 110-45, at 4 (2007) (same). FOIA is clear: A requester prevails when there is "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(II).

The CIA's contention that The Times is not entitled to fees and costs relies principally on the theory that its abandoned Glomar response was "correct as a matter of law." (*See* CIA Mem. at 5 (arguing that it should fall within a "safe harbor" that categorically exempts it from liability for fees and costs).) For an agency to establish that its position was "correct as a matter of law" and avoid fees, it must "satisfy the summary judgment standard that there are no genuine issues of material fact in dispute." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).[1]

The CIA falls far, far short of meeting that burden here. It needs to show that that there were no genuine issues of material fact as to whether the mere existence of the three

[1] The effect on the entitlement analysis of an agency demonstrating that its position was "correct as a matter of law" is distinct from the effect of an agency demonstrating that it had a reasonable legal basis for its position: "If the Government's position is correct as a matter of law, that will be dispositive. If the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus." *Davy v. CIA*, 550 F.3d 1155, 1162 (D.C. Cir. 2008); *see also Brayton*, 641 F.3d at 526-27.

requested records was a fact exempt from disclosure under FOIA Exemptions 1 and 3. *See* 5 U.S.C. § 552(b)(1), (b)(3). In fact, the CIA's own conduct in this litigation belies that argument. In June, the CIA claimed – under oath – that the mere acknowledgement of the existence of these materials would risk harming national security and compromising intelligence sources and methods. (Decl. of Antoinette B. Shiner ¶¶ 9-35 (June 10, 2016), ECF No. 13.) Yet, a few months later, the agency reversed course dramatically: Not only could the existence of the documents be acknowledged but much of the information contained in the documents could be publicly disclosed. The CIA does not identify any relevant factual change that precipitated its about-face.[2] The CIA says that its consideration of "equities," not its fear that its dubious legal position was foundering, prompted the release of the documents. (CIA Mem. at 1, 3; Decl. of Antoinette B. Shiner ("Second Shiner Decl.") ¶¶ 9, 20-22 (Feb. 8, 2017).) But it declines to say what those equities were – let alone when those equities came into being, why they were not present at the time the FOIA request was denied or at the time the lawsuit was filed, or why they were never considered until The Times raised serious doubts about the CIA's case on summary judgment. That is because, in truth, the "equities" are a smokescreen: Besides the course of this litigation, nothing in the real world had changed between June and September – no relevant change in the situation in Iraq, no official acknowledgments, no change in chemical weapons identification or disposal methods. There are only two possible explanations for what happened in this case: Either the CIA's Glomar response was improper from the start or the CIA decided in

[2] Notably, in *Brayton*, a change in circumstances, not the plaintiff's lawsuit, yielded the declassification and disclosure decision: European negotiating partners asked the defendant-agency – the U.S. Trade Representative – to consent to lifting World Trade Organization restrictions on disclosure of the trade agreement the FOIA request sought. *See Brayton*, 641 F.3d at 523.

September to endanger national security and risk exposing sources and methods by acknowledging the requested reports and disclosing substantial portions of them.

It is telling, too, that the CIA does not point to any information in the released materials that should have and could have been kept secret but for its exercise of "discretion." In light of the many disclosures cited by The Times in the summary judgment briefing, it is clear that these documents should have been released months or years ago in their redacted form without any litigation – which is why fees are proper.[3] (*See* Mem. of Law in Supp. of Pl.'s Mot. for Att'ys' Fees & Costs ("Times Mem.") at 7; *see also* Decl. of David E. McCraw, Exs. 1-3, *N.Y. Times v. Dep't of the Army*, No. 16-cv-3123(JSR) (S.D.N.Y. Dec. 22, 2016), ECF No. 22 (copies of three records produced by CIA in the instant litigation).)

The CIA concedes that "recalcitrance" and "obdurate behavior" undercut any claim of reasonableness. (CIA Mem. at 5.) Those two terms are particularly apt here, where, among other things, the CIA: (1) submitted a boilerplate summary judgment declaration rather than addressing the specific facts of this case on summary judgment; (2) overlooked and then, when it was pointed out, largely ignored controlling precedent on reply (*i.e.*, the Second Circuit's decision in *Florez v. CIA*, 829 F.3d 178 (2d Cir. 2016)); (3) failed to address the many specific prior disclosures that The Times raised in its summary judgment motion; (4) declined to put in a classified declaration until it feared losing on summary judgment; and (5) finally, won the right

[3] The CIA recycles the argument that it had to give the Glomar response because The Times had somehow learned the titles of the three documents and "confirming their existence would have confirmed and authenticated an unauthorized leak of classified information." (CIA Mem. at 6-7.) As the absence of citations in the CIA's brief highlights, that argument has no basis in FOIA law. The Glomar response here has to be tied to Exemption 1 or Exemption 3. How the requester learned of the information that spurred his or her request does not factor into either analysis. More to the point, it does not diminish the effect on those analyses, under *Florez v. CIA*, 829 F.3d 178, 184-87 (2d Cir. 2016), of the official disclosures The Times identified in its summary judgment briefing. (*See* Times Mem. at 7.)

to put in a classified declaration only to decide not to do so a few weeks later. (*See* Times Mem. at 1-3, 7.) The Glomar response was not reasonable, and the disclosure was not discretionary. FOIA required it.[4]

**II.**

**THE CIA HAS FAILED TO JUSTIFY ITS OBJECTIONS TO THE REASONABLENESS OF THE TIMES'S FEES APPLICATION**

The CIA raises several objections to the reasonableness of The Times's reported hours. These objections rely on little more than speculation and a selective reading of the case law, and the Court should reject them. *First*, the CIA offers no reason why a media FOIA requester should be disadvantaged when he or she shapes a request on the basis of prior investigative reporting, what the CIA pejoratively calls a "leak." (*See* CIA Mem. at 9.) To the contrary, that kind of prior reporting is often instrumental to making FOIA work to serve the public interest. *See* Seth F. Kreimer, *The Freedom of Information Act and the Ecology of Transparency*, 10 U. PA. J. CONSTL. L. 1011, 1041-42 & nn.115-21 (2008) (collecting instances where investigative reporting has prompted and facilitated productive and public interest-serving FOIA requests).

*Second*, although the Court granted the CIA's request to submit a classified declaration, the courts have recognized that a fee award is based on the overall outcome of a case, not a flyspecking of each intermediate motion made. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 & n.11 (1983); *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 238 (D.D.C. 2011) (in FOIA context). "'[A] litigant who is unsuccessful at a stage of litigation

[4] The CIA's Glomar response, in other words, was improper as a matter of law. Even if the CIA could show that its position had a reasonable legal basis, The Times would nevertheless be entitled to fees and costs, because the balance of the four entitlement factors weighs heavily in The Times's favor. (*See* Times Mem. at 5-7.)

that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage.'" *Hall v. CIA*, 115 F. Supp. 3d 24, 29 (D.D.C. 2015) (internal quotation marks omitted) (quoting *Air Transp. Ass'n v. FAA*, 156 F.3d 1329, 1335 (D.C. Cir. 1998)). Hours spent on unsuccessful motion practice need not be deducted where that motion practice "may have encouraged [the agency] to release its records." *Elec. Privacy Info. Ctr.*, 811 F. Supp. 2d at 239. Here, the litigation over the classified declaration was the final step on the way to the CIA's decision to relinquish its Glomar response. As the CIA concedes, that litigation factored into its decision to produce the requested records. (Second Shiner Decl. ¶ 22.) The CIA also conveniently forgets that it made The Times engage in this legal work for no reason. After winning the motion, it quickly decided not to file the classified declaration. (*See* Times Mem. at 3; Decl. of David E. McCraw ("McCraw Decl.") ¶¶ 19-21 (Jan. 25, 2017).). The Times should not be penalized for the erratic litigation strategy that the CIA undertook in this case.

*Third*, the CIA overreads case law in order to justify its contention that fees sought for certain tasks are unrecoverable. (*See* CIA Mem. at 9-10.) The Times seeks fees for time spent reviewing the CIA production in order to assess whether and how to challenge the agency's withholdings. (*See* Times Mem. at 3; McCraw Decl. ¶¶ 22-23.). That process prompted the CIA to disclose three categories of previously redacted information and, ultimately, led to the conclusion of merits litigation. (Times Mem. at 3.) That type of litigation-driven review is compensable under FOIA's fee-shifting provision. *See Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 75 (D.D.C. 2013).[5] As to what the CIA appears to believe to

[5] The case the CIA cites for the contrary proposition refers to review of records for non-litigation purposes. *See Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 825 F. Supp. 2d 226, 231 (D.D.C. 2011) (review was "a post-relief activity, separate from the litigation," unrelated to challenging withholdings).

be administrative-stage work, the record makes clear that this was work done to prepare the complaint filed in this case. (*See* McCraw Decl. Ex. A (first entry for Tali Leinwand).)

As for the remainder of the CIA's objections, it has put in no factual support for its claims that The Times's fee request is unreasonable. Instead, it simply speculates that some of the work could have been done by paralegals or that The Times could have worked more efficiently because it had previously engaged in FOIA litigation. (CIA Mem. at 9-10.) It offers no proof to back up any of that speculation. What it offers instead is precisely the type of conjecture and threadbare assertions that courts regularly reject as insufficient for an agency opposing attorneys' fees to meet its burden. *See, e.g.*, *Hall*, 115 F. Supp. 3d at 31; *Elec. Privacy Info. Ctr.*, 999 F. Supp. 2d at 74-75; *Rosenfeld v. Dep't of Justice*, 904 F. Supp. 2d 988, 1005-07 (N.D. Cal. 2012). The Times made a factual record of its efforts and the reasonableness of those efforts under all the circumstances of this case. (Times Mem. at 8-10; McCraw Decl. ¶¶ 10-23, Ex. A.) Those facts stand unchallenged.

**CONCLUSION**

For all the reasons set forth here and in The Times's prior papers, The Times respectfully requests that the Court award it $61,909.86 in fees and costs.

Dated: New York, New York
February 15, 2017

Respectfully submitted,

__/s/ David E. McCraw__________

David E. McCraw, Esq.
Legal Department
The New York Times Company
620 Eighth Avenue, 18th Floor
New York, NY 10018
phone: (212) 556-4031
fax: (212) 556-1009
e-mail: mccraw@nytimes.com
*Counsel for Plaintiff*